Filed 1/24/14  P. v. Lewis CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAVID WAYNE LEWIS,<br><br>    Defendant and Appellant. | F064694<br><br>(Super. Ct. No. BF130438A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Gary T. Friedman, Judge.

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kari L. Ricci, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

David Wayne Lewis, with a blood alcohol content of .22 percent, drove through a red light and collided with a truck. His passenger, Michael Rogers, died at the scene. A jury found Lewis guilty of second degree murder (Pen. Code, § 187, subd. (a))[1] and gross vehicular manslaughter (§ 191.5, subd. (a)).

Lewis argues the trial court abused its discretion when it overruled his objection to evidence (1) that Lewis had suffered three prior convictions for driving while under the influence of alcohol, (2) he had attended courses to regain his driver license, (3) evidence of the topics presented at these courses, and (4) Lewis's response to topics presented during these courses. Since the charge of second degree murder required the prosecution to prove beyond a reasonable doubt that Lewis acted with implied malice when the accident occurred, the evidence was relevant and admissible. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

### *The Charges*

The amended information charged Lewis with second degree murder (§ 187, subd. (a)), and gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)).[2] The gross vehicular manslaughter count also alleged that because of Lewis's prior convictions for driving under the influence, if convicted, he was subject to a prison term of 15 years to life. (§ 191.5, subd. (d).)

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] The amended information also contained two additional charges, causing bodily injury to another while driving under the influence of alcohol (Veh. Code, § 23153, subd. (a)), and causing bodily injury to another while driving with a blood alcohol level greater than .08 percent (Veh. Code, § 23153, subd. (b)). These charges were dismissed at the request of the prosecutor prior to trial.

*The Testimony*

Janet Castro was driving home with her boyfriend, Sisco Vijil, and her son on December 21, 2009. They were traveling northbound on Highway 43, and had stopped for a red light at the intersection of Kimberlina Road. Vijil, who was driving, was waiting for a tractor-trailer rig to complete a left turn onto Kimberlina from southbound Highway 43. Vijil made a comment that a vehicle (Lewis's vehicle) approaching from the rear was traveling very fast. When Castro looked for the approaching vehicle she saw it "fly by" on the right side of the vehicle she was in, and then run into the tractor-trailer rig. The truck did not appear to move very much with Lewis's vehicle taking most of the impact. Castro did not hear any brakes before the collision. The light controlling northbound traffic on Highway 43 was red when Lewis's vehicle entered the intersection. Castro immediately called for emergency services.[3]

Kern County Fire Department personnel arrived at the scene and were informed by ambulance personnel that Rogers was deceased. It was determined that because of the extensive damage to the automobile the fire department would have to extricate the driver from the vehicle. This was accomplished by removing the doors from the vehicle.

When paramedic Andrew Farrell arrived at the scene, he observed an accident between a tractor trailer and passenger automobile. The driver of the tractor trailer appeared uninjured. The passenger in the automobile was deceased, and the driver had several lacerations on his head and appeared to be in a confused state. The driver identified himself as Lewis. The Kern County Fire Department had to extricate Lewis from the vehicle before paramedics provided treatment.

Kern County Senior Deputy Sheriff Bob Venable was dispatched to the hospital to interview Lewis. Before driving to the hospital he had seen beer cans at the scene so he

---

[3]    Vijil also testified in a substantially similar manner.

3.

thought alcohol may have been involved in the accident. At the hospital, Lewis first admitted he had been driving the vehicle, but later indicated that Rogers may have been driving the vehicle because Lewis was not certain about what occurred. Venable smelled the odor of alcoholic beverage when speaking with Lewis, and also observed that Lewis had red watery eyes. Lewis admitted he and Rogers had drunk several beers at their house, and then the two drove to a bar and consumed more beer. The two were on their way home when the accident occurred.[4]

The parties stipulated that on the night of the incident, blood was drawn from Lewis twice and each sample was tested for blood alcohol levels. The first blood draw occurred at 7:45 p.m. and the blood alcohol level was .218 percent. The second blood draw occurred at 10:35 p.m. and the blood alcohol level was .11 percent.

Ronald Bailey, a criminalist for the Kern County Crime Lab, explained that the type of test done by the hospital, a serum alcohol test, actually concentrates the alcohol in the blood, so the reported level is higher than a whole blood test. He estimated the alcohol was approximately 18 percent more concentrated than a whole blood test. Using the 18 percent figure, Bailey concluded that the test performed by the hospital, if performed on whole blood instead of serum, would have resulted in an alcohol level of .185. Using this information, Bailey calculated the alcohol elimination rate for Lewis. He then opined that at the time of the accident, Lewis's blood alcohol content was .22 percent.

The remainder of the testimony related to Lewis' past infractions. California Highway Patrol Officer Jeffrey Douglas Nousch testified that he arrested Lewis in 1999 for driving while intoxicated. Lewis's blood alcohol content tested at .13 percent. Both

---

[4]      Lewis and Rogers were roommates.

Lewis and his passenger were taken to the hospital for treatment of minor injuries. Lewis pled guilty to a misdemeanor violation of Vehicle Code section 23153, subdivision (a).

Katherine Sons is an alcohol and drug counselor for TAASK, a program for people arrested for driving while under the influence of alcohol. The program lasts three months for first time offenders, and 18 months for repeat offenders. The State of California has a specific curriculum for first time offenders. She confirmed that Lewis enrolled in a three month program in 1999, and completed that program in 2000. During the program it would have repeatedly been explained to Lewis that if you drive while intoxicated you could seriously injury or kill someone.

The prosecution next introduced evidence that Lewis was arrested and convicted for driving while under the influence on March 13, 2004, and on March 27, 2004.

Linda Eviston, the executive director at STEPS, another program for individuals who have been convicted of driving under the influence of alcohol, confirmed that Lewis enrolled in one of the 18 month multiple offender programs at STEPS on September 20, 2005, and completed the program on May 8, 2007.

Christine Joy Essepian was Lewis's counselor at the STEPS program. She explained the goals of the program and how the program works. Essepian testified that in every group she teaches she reminds the clients that driving while intoxicated can result in the death of the driver or someone else. The prosecutor reviewed some of the forms filled out by Lewis while he was enrolled in the program. As an example, one of the forms asked Lewis how he would feel if he were involved in a fatal collision while intoxicated. Lewis replied, "I have been in several accidents and I am very fortunate that I haven't killed somebody or even myself. That is one of the … main reasons why I don't drink anymore." Another question was whether Lewis believed he made logical choices when he received his driving under the influence ticket. Lewis responded, "No, I didn't. I should have … never got behind the wheel when I drank. That is why I will never drink again. It has caused me nothing but trouble." Another comment made by

Lewis was that he "learned that 6,568 people have died from alcohol-related accidents, drunk driving."

### The Verdict and Sentencing

The jury found Lewis guilty of each charge, and found each enhancement to be true. The trial court sentenced Lewis to a term of 15 years to life for the second degree murder charge, but stayed the sentence on the gross vehicular manslaughter charge pursuant to section 654.

## DISCUSSION

The only issue is whether the trial court abused its discretion when it denied Lewis's motion to exclude evidence of his prior drunk driving arrests and the DUI classes he took to regain his driving privilege. Lewis admits the evidence was relevant and probative, but asserts the amount of evidence admitted, and the inflammatory nature of some of that evidence, required the trial court to limit the evidence offered by the prosecution. We do not agree.

Lewis objected to this evidence pursuant to the provisions of Evidence Code section 352. This section grants the trial court discretion to exclude relevant evidence if the probative value of the evidence is substantially outweighed by the probability that its admission will (1) necessitate the undue consumption of time, or (2) create substantial danger of undue prejudice, or (3) create substantial danger of confusing the issues, or (4) create substantial danger of misleading the jury. The statute grants the trial court broad discretion in making determinations under Evidence Code section 352. (*People v. Clark* (2011) 52 Cal.4th 856, 893.) We review the rulings of the trial court under the deferential abuse of discretion standard. (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.) We will interfere with the trial court's ruling only if the record demonstrates the trial court acted in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

Lewis faced two charges at trial, second degree murder and gross vehicular manslaughter while intoxicated. The murder charge was based on the theory of implied malice. Malice is implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188.) Recognizing that the statutory definition of implied malice is vague and, therefore, requires judicial interpretation (*People v. Bryant* (2013) 56 Cal.4th 959, 964), the Supreme Court has explained that implied malice exists when (1) a person commits an act, (2) the natural consequences of the act are dangerous to life, (3) the person knew his conduct endangered the life of others, and (4) the person deliberately acted with conscious disregard for life. (*People v. Watson* (1981) 30 Cal.3d 290, 300.) This definition of implied malice includes " 'both a physical and a mental component. The physical component is satisfied by the performance of "an act, the natural consequences of which are dangerous to life." [Citation.] The mental component is the requirement that the defendant "knows that his conduct endangers the life of another and ... acts with a conscious disregard for life." [Citation.]' [Citation.]" (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.) The mental component is a subjective standard requiring the prosecution prove the " 'defendant's awareness of engaging in conduct that endangers the life of another ….' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) Accordingly, the prosecution was required to prove beyond a reasonable doubt that Lewis was aware that driving a vehicle while intoxicated endangered the life of another, and he decided to drive while intoxicated even though he knew doing so was dangerous to the lives of others.

The evidence about which Lewis complains was aimed at proving the mental component of implied malice. The primary type of evidence offered by the prosecution to prove this element of the crime related to DUI classes Lewis took to regain his driver license. In those classes, Lewis was required to fill out forms relating what he had learned in each session, and his plan to avoid future offenses. The forms Lewis filled out

were admitted into evidence, and the counselor who led Lewis's class testified about the following portions of the forms:

> Lewis was asked to describe how he behaved when intoxicated. He wrote "blackouts, loss of memory, judgment is messed up, I feel I am o.k. but in reality I am not."

> Lewis wrote that he learned "that 90% of date rapes involve alcohol. Bottom line alcohol is no good and is a evil thing for me. Thats why I don't drink anymore."

> One form asked Lewis "How would you feel if you were involved in a fatal collision while under the influence, and it was your fault?" Lewis wrote "I have been in several accidents and I am very fortunate that I haven't killed somebody or even myself. That is one of the main reasons why I don't drink anymore."

> Lewis wrote that he learned in class that "1 in 4 Drivers are on something or have been drinking. Increase your chances of living or not getting in a accident by driving sober, it's hard enough to concentrate driving sober."

> When asked whether he made a logical choice when he was cited for driving under the influence, Lewis wrote "No I didn't, I should have never got behind the wheel when I drank. That is why I will never drink again. It has caused me nothing but trouble and I am happier when I do not drink."

> One class apparently dealt with individuals who are opinionated and judgmental. Lewis wrote "I am criticizing because I do analyze and evaluate almost everything I do now. I didn't used to when I was a drunk (I didn't care)."

> In one session Lewis was asked to respond to the question of who was responsible for his DUI conviction. He responded "Myself and I am glad I got a DUI because I feel that I was out of control and this is what it took for me to realize that I needed to stop drinking all together and that I had a problem."

> After one session, Lewis wrote that he learned "that 6,568 people have died from alcohol related accidents (drunk driving)."

> Lewis stated on one form that three positive things that occurred as a result of his conviction were "stopped drinking, being more responsible, grateful that nothing else happened."

8.

In response to a question asking whether he knew how much damage he was doing to himself as a result of his substance abuse, Lewis wrote "No, and at that time I just did not care. Now am paying the consequences but I am at the end of my damage control and I am thankful that it is finally over."

As part of his exit plan, Lewis was asked to write six things that would prevent him from using alcohol again. Lewis listed the following:

"(1) My son.

"(2) My drivers license.

"(3) The long struggle I went through that I will not do to myself again.

"(4) My happiness.

"(5) Me being an example for my son, family and friends.

"(6) I will not drink or use drugs again let alone drive under the influence."

In addition to this evidence, the prosecution introduced evidence that Lewis was convicted for driving under the influence of alcohol in 1999 after he had an accident. Lewis's blood alcohol content tested at .13, and Lewis and his passenger were both treated for minor injuries. In addition, the prosecution introduced evidence that Lewis completed a three month program in 2000, and during this program Lewis was repeatedly informed that he could seriously injure or kill someone if he continued to drive while intoxicated. The prosecution also introduced evidence that Lewis was convicted of driving while under the influence twice in 2004, for incidents that occurred in the month of March.

Lewis concedes the statements were relevant and probative to prove implied malice, but contends the trial court should have limited the amount of information presented to the jury. Lewis opines the prosecution should have been limited to evidence of the prior arrests and the three month program because this evidence was ample to ensure his conviction.

9.

As stated above, to prove Lewis acted with implied malice, the prosecution was required to prove (1) Lewis intentionally committed an act, (2) the natural and probable consequence of the act was dangerous to human life, (3) Lewis knew the act was dangerous to human life, and (4) Lewis deliberately acted with conscious disregard for human life, i.e., he deliberately acted even though he knew his actions would endanger human life. (CALCRIM No. 520.) There was no dispute that Lewis intentionally drove a motor vehicle while he was intoxicated, and Lewis conceded that he knew that if he got into a vehicle it would be dangerous to human life, satisfying elements one and three.

Lewis questioned whether there was evidence that the natural and probable consequence of driving while intoxicated was dangerous to human life, pointing out that many intoxicated drivers arrive at their destination without harming anyone. His primary argument, however, was that he did not act with a conscious disregard for human life when he drove while intoxicated. Defense counsel argued in closing that (1) the fact that Lewis drove with a blood alcohol content of .22 did not conclusively establish that Lewis acted with a conscious disregard for human life, (2) Lewis's cooperation with law enforcement suggested he was acting responsibly, (3) there was no evidence that Lewis drove dangerously at any time before the accident, and (4) he attempted to stop before the collision, an act suggesting Lewis was concerned about human life. Each of these arguments, according to defense counsel, suggested that Lewis did not have a conscious disregard for human life.

The evidence about which Lewis complains suggests otherwise. This evidence established that Lewis knew it was dangerous to drive while intoxicated and that people frequently were killed by intoxicated drivers. In the words of the jury instruction, the evidence established that Lewis was conscious (aware) that driving while intoxicated could result in the loss of human life. Lewis then deliberately acted (chose to drive while intoxicated) thereby disregarding his knowledge that driving while intoxicated endangered his life and the life of others. In other words, the evidence was necessary to

10.

prove that Lewis deliberately acted with conscious disregard for life. The trial court did not abuse its discretion in so concluding.

Lewis's suggestion that this probative evidence should have been excluded admits, in essence, the evidence to prove Lewis's guilt was overwhelming. Accordingly, logic compels the conclusion that Lewis could not have suffered any prejudice by the admission of the evidence. If the evidence did not establish Lewis's guilt overwhelmingly, then the trial court's ruling was correct and the evidence should have been admitted in an attempt to prove guilt beyond a reasonable doubt. If, on the other hand, the evidence was overwhelming, then, theoretically, the trial court could have limited that evidence to the point where it conclusively established Lewis's guilt. The impossibility of knowing exactly when evidence reaches the point of conclusively establishing a defendant's guilt is why the trial court is granted wide discretion when ruling on such motions (*People v. Clark, supra,* 52 Cal.4th at p. 893), and also explains why the trial court did not err in denying Lewis's motion.

The evidence introduced by the prosecution about Lewis's prior convictions and his attempts at rehabilitation was not excessive. The only witness of any length was Essepian. The fact Essepian was emotionally distraught during her testimony simply demonstrated that she was concerned about her students, and devastated when Lewis caused a fatal accident after all of her efforts to prevent just such an outcome. Moreover, we note that defense counsel never sought to exclude Essepian's testimony on the basis that her presentation would be too emotional. To the extent such an objection could be made, it was forfeited. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1276.)

Finally, the type of prejudice Evidence Code section 352 was designed to prevent was not present in this case. " 'The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' [Citations.] 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or

11.

cause on the basis of extraneous factors. [Citation.]' [Citation.]" (*People v. Zapien* (1993) 4 Cal.4th 929, 958.)

There was little if any danger the evidence of past convictions for driving under the influence would cause the jury to prejudge Lewis. The circumstances of the current offense were far more serious than the prior offenses. Only one of the prior incidents involved injury, and the injuries were not serious. The testimony about the topics covered in the classes Lewis took, and his written responses to the topics discussed, did not generate the type of prejudice at which Evidence Code section 352 is directed. This information established Lewis's knowledge about the dangers of driving while intoxicated, but would not cause any reasonable juror to prejudge him.

Accordingly, we conclude Lewis's argument must be rejected for the three reasons outlined above: (1) The trial court did not abuse its discretion when overruling Lewis's objection, (2) the evidence was not prejudicial in the sense described in Evidence Code section 352, and (3) even if there was error, Lewis did not suffer any prejudice because of the error.[5]

Lewis also argues the introduction of this evidence violated the due process clause of the Fourteenth Amendment to the United States Constitution rendering his trial fundamentally unfair. As we have demonstrated, the evidence was material and probative on the issue of whether Lewis subjectively knew his actions were dangerous, and whether he acted in conscious disregard of life. The evidence harmed Lewis's case because it defeated his only possible defense to the charges, not because it had the potential for causing the type of prejudice prohibited by Evidence Code section 352. Because the evidence was relevant and was not impermissibly prejudicial, the evidence

---

[5]     For the same reasons, we also reject Lewis's suggestion that this evidence was also inadmissible to prove that he acted with gross negligence. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1204-1206.)

12.

did not render the trial fundamentally unfair within the meaning of the Fourteenth Amendment.

## DISPOSITION

The judgment is affirmed.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
KANE, J.


_____
POOCHIGIAN, J.