Opinion
LIU, J.
During an altercation in an apartment they shared, defendant Amalia Catherine Bryant stabbed her boyfriend once in the chest, killing him. The jury convicted her of second degree murder. On appeal, the Court of Appeal reversed the murder conviction, concluding that the trial court erred by failing to sua sponte instruct the jury on voluntary manslaughter as a lesser included offense of murder on the theory that defendant killed without malice in the commission of an inherently dangerous assaultive felony. We granted review to decide whether such a theory of voluntary manslaughter exists and whether the trial court should have instructed sua sponte on that theory. We conclude that such a killing is not voluntary manslaughter and that the trial court therefore did not err in failing to so instruct the jury. Accordingly, we reverse the judgment of the Court of Appeal.
I.
On November 24, 2005, neighbors responded to the apartment in which defendant lived with her boyfriend Robert Golden to find defendant screaming and Golden lying facedown in the front doorway. Defendant was pleading with Golden to “wake up.” Golden had a stab wound to the chest and no pulse; he was pronounced dead at the hospital. During two police interviews and in testimony at trial, defendant later recounted what happened. She stated that during a physical altercation, she grabbed a knife from the kitchen and threatened to hurt Golden if he did not let her leave. Golden lunged for the knife, and the two struggled over it. Defendant broke free with the knife in her hand. When Golden then came toward defendant, she made a thrusting motion at him with the knife, and it went into his chest. Defendant claimed she never intended to kill Golden.
The trial court instructed the jury regarding first degree premeditated murder, second degree murder, and voluntary manslaughter based upon heat of passion and unreasonable self-defense, as well as the defense of reasonable *964 self-defense. The jury convicted defendant of second degree murder and found true the allegation that she personally used a deadly weapon. The trial court sentenced defendant to 15 years to life in prison for murder plus a consecutive year for the weapon enhancement.
On appeal, defendant claimed the trial court erred by not sua sponte instructing on involuntary manslaughter as a lesser included offense of murder on the theory that defendant killed unlawfully in the commission of misdemeanor brandishing a weapon or in the commission of a lawful act committed with criminal negligence. The Attorney General responded that defendant’s conduct exceeded brandishing a weapon and that no evidence showed she had performed a lawful act negligently. Thereafter, on its own initiative, the Court of Appeal requested supplemental briefing on the following question: “Did the trial court commit reversible error by not instructing the jury sua sponte that an unintentional killing without malice during the course of [an] inherently dangerous assaultive felony constitutes voluntary manslaughter? (See People v. Garcia (2008) 162 Cal.App.4th 18 [74 Cal.Rptr.3d 912].)” The Court of Appeal instructed the parties to “assume that the People are correct that there is substantial evidence that appellant committed, at a minimum, a felony assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)).” Defendant argued that the trial court should have the jury instructed on voluntary manslaughter based upon that theory, and that the error was prejudicial. The Attorney General responded that there was no evidentiary basis for the instruction and, alternatively, that any error was harmless. The Court of Appeal reversed defendant’s murder conviction, concluding that “the trial court erred in failing to instruct the jury on the lesser included offense of voluntary manslaughter, based on the theory articulated in Garcia.” We granted the Attorney General’s petition for review and now reverse.
II.
Murder is defined as “the unlawful killing of a human being, or a fetus, with malice aforethought.” (Pen. Code, § 187, subd. (a); all further statutory references are to the Penal Code.) Malice aforethought “may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.” (§ 188.) As we have noted, the statutory definition of implied malice “is quite vague” and “permits, even requires, judicial interpretation.” (People v. Chun (2009) 45 Cal.4th 1172, 1181 [91 Cal.Rptr.3d 106, 203 P.3d 425] (Chun); see People v. Lasko (2000) 23 Cal.4th 101, 107 [96 Cal.Rptr.2d 441, 999 P.2d 666] (Lasko); People v. Dellinger (1989) 49 Cal.3d 1212, 1217 [264 Cal.Rptr. 841, *965 783 P.2d 200] [“The statutory definition of implied malice has never proved of much assistance in defining the concept in concrete terms.”].) “We have interpreted implied malice as having ‘both a physical and a mental component. The physical component is satisfied by the performance of “an act, the natural consequences of which are dangerous to life.” [Citation.] The mental component is the requirement that the defendant “knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life.” [Citation.]’ [Citation.]” (Chun, at p. 1181; see People v. Phillips (1966) 64 Cal.2d 574, 587 [51 Cal.Rptr. 225, 414 P.2d 353], overruled on another ground in People v. Flood (1998) 18 Cal.4th 470, 490, fn. 12 [76 Cal.Rptr.2d 180, 957 P.2d 869] (Flood).)
“A defendant may also be found guilty of murder under the felony-murder rule. The felony-murder rule makes a tilling while committing certain felonies murder without the necessity of further examining the defendant’s mental state.” (Chun, supra, 45 Cal.4th at p. 1182.) “Under the felony-murder doctrine, when the defendant or an accomplice tills someone during the commission, or attempted commission, of an inherently dangerous felony, the defendant is liable for either first or second degree murder, depending on the felony committed. If the felony is listed in section 189, the murder is of the first degree; if not, the murder is of the second degree. [Citations.] Felony-murder liability does not require an intent to till, or even implied malice, but merely an intent to commit the underlying felony. [Citation.]” (People v. Gonzalez (2012) 54 Cal.4th 643, 654 [142 Cal.Rptr.3d 893, 278 P.3d 1242], italics omitted; see Chun, at p. 1182.) “The felony-murder doctrine, whose ostensible purpose is to deter those engaged in felonies from tilling negligently or accidentally, operates to posit the existence of that crucial mental state—and thereby to render irrelevant evidence of actual malice or the lack thereof—when the tiller is engaged in a felony whose inherent danger to human life renders logical an imputation of malice on the part of all who commit it.” (People v. Satchell (1971) 6 Cal.3d 28, 43 [98 Cal.Rptr. 33, 489 P.2d 1361], overruled on another ground in Flood, supra, 18 Cal.4th at p. 490, fn. 12.)
Although we affirmed the constitutionality of the second degree felony-murder rule in Chun, we recognized that “the rale has often been criticized and, indeed, described as disfavored.” (Chun, supra, 45 Cal.4th at p. 1188.) As such, we have “restricted its scope in at least two respects to ameliorate its perceived harshness.” (Ibid.) First, the second degree felony-murder rule applies only to felonies inherently dangerous to human life. (People v. Burroughs (1984) 35 Cal.3d 824, 829 [201 Cal.Rptr. 319, 678 P.2d 894] (Burroughs); People v. Williams (1965) 63 Cal.2d 452, 457 [47 Cal.Rptr. 7, 406 P.2d 647].) Second, we have limited the second degree felony-murder rule through the so-called merger doctrine articulated in People v. Ireland (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580] (Ireland).
*966 In Ireland, we concluded that second degree felony murder could not be predicated upon a killing during the commission of assault with a deadly weapon. We explained: “To allow such use of the felony-murder rule would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault—a category which includes the great majority of all homicides. This kind of bootstrapping finds support neither in logic nor in law. We therefore hold that a second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included in fact within the offense charged.” (Ireland, supra, 70 Cal.2d at p. 539.) We clarified in Chun that the merger rule applies when “the underlying felony is assaultive in nature,” including situations where “the elements of the crime have an assaultive aspect. . . even if the elements also include conduct that is not assaultive.” (Chun, supra, 45 Cal.4th at p. 1200.)
Thus, under the' felony-murder rule, a defendant who kills in the commission of an inherently dangerous felony not enumerated in section 189 is liable for second degree murder. However, under Ireland and Chun, if that inherently dangerous felony “is assaultive in nature” (Chun, supra, 45 Cal.4th at p. 1200), the felony-murder rule does not apply, and a defendant may not be found guilty of murder without proof of malice. Here, as the Court of Appeal reasoned, defendant, if she committed any crime at all, committed at least assault with a deadly weapon, an offense we assume to be inherently dangerous. Under the merger doctrine, that offense is an assaultive felony to which the felony-murder rule does not apply, and a defendant who kills in the commission of assault with a deadly weapon cannot be convicted of murder on that basis alone. Proof of malice is required. But suppose, as the Court of Appeal posited, that the killing was committed without malice. In that case, what offense has defendant committed?
We addressed a related question in Burroughs, in which we held that a killing without malice in the commission of a noninherently dangerous felony would constitute involuntary manslaughter if “committed without due caution and circumspection.” (Burroughs, supra, 35 Cal.3d at p. 835.) In that case, the defendant, a “self-styled ‘healer,’ ” convinced a cancer patient to undergo the defendant’s alternative treatments, culminating in “ ‘deep’ abdominal massages,” which led to “a massive hemorrhage” causing the victim’s death. (Id. at pp. 826-828.) The jury convicted the defendant of second degree felony murder on the theory that the killing occurred in the commission of felony practicing medicine without a license. Burroughs reversed the murder conviction, concluding that practicing medicine without a license could not support a felony-murder conviction because it was not an inherently dangerous felony. (Id. at pp. 829-833.) To give guidance to the *967 trial court on remand, Burroughs said the defendant “was susceptible to a possible conviction of involuntary manslaughter.” (Id. at p. 834.) Burroughs reasoned in part that the defendant in that case could not be convicted of voluntary manslaughter because there had been no evidence that the defendant had any intent to kill his victim. (Id. at p. 835, fn. 8.) This conclusion followed from our statements in a number of prior cases that intent to kill is an element of voluntary manslaughter. (See, e.g., People v. Forbs (1965) 62 Cal.2d 847, 852 [44 Cal.Rptr. 753, 402 P.2d 825]; People v. Bridgehouse (1956) 47 Cal.2d 406, 413 [303 P.2d 1018].)
We have since held, however, that intent to kill is not an element of voluntary manslaughter. (See Lasko, supra, 23 Cal.4th at pp. 108-111; People v. Blakeley (2000) 23 Cal.4th 82, 88-91 [96 Cal.Rptr.2d 451, 999 P.2d 675] (Blakeley).) In the context of heat of passion voluntary manslaughter, we reasoned in Lasko that “[j]ust as an unlawful killing with malice is murder regardless of whether there was an intent to kill, an unlawful killing without malice (because of a sudden quarrel or heat of passion) is voluntary manslaughter, regardless of whether there was an intent to kill.” (Lasko, at pp. 109-110.) In Blakeley, we rejected the defendant’s claim that an unintentional killing in unreasonable self-defense constituted involuntary manslaughter, noting that the defendant’s position was based on the erroneous “assumption that intent to kill is a necessary element of voluntary manslaughter.” (Blakeley, at p. 89.)
Garcia, the decision on which the Court of Appeal below premised its holding, relied on these decisions in suggesting that a killing committed without malice in the commission of an inherently dangerous assaultive felony constitutes voluntary manslaughter. (People v. Garcia, supra, 162 Cal.App.4th at p. 31.) The defendant in Garcia struck the victim in the face with the butt of a shotgun. The victim fell, fractured his skull on the sidewalk, and died. The jury acquitted the defendant of murder but convicted him of voluntary manslaughter. (Id. at p. 23.) On appeal, the defendant argued that the trial court should have instructed the jury regarding involuntary manslaughter “because there was substantial evidence the killing of [the victim] was committed without malice and without either an intent to kill or conscious disregard for human life and, therefore, was neither murder nor voluntary manslaughter.” (Id. at p. 26.) Garcia accepted the premise that a killing without malice committed in the course of an inherently dangerous assaultive felony constitutes a form of manslaughter. (Id. at pp. 31-32.) However, it nevertheless rejected the defendant’s claim. Garcia reasoned: “In light of the Supreme Court’s holdings in [Blakeley] and [Lasko] that a specific intent to kill is not an element of the crime of voluntary manslaughter, and particularly its express disapproval of the statement in [Burroughs] . . . that proof of such an intent is required [citation], we . . . *968 conclude an unlawful killing during the commission of an inherently dangerous felony, even if unintentional, is at least voluntary manslaughter.” (Garcia, at p. 31, citations omitted.)
The Attorney General contends that such a killing cannot be voluntary manslaughter because “either intent to kill or a conscious disregard for life is an essential element of voluntary manslaughter.” We understand the term “conscious disregard for life” to refer to the mental component of our definition of implied malice—i.e., that the act which resulted in death be “ ‘performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life’ [citation].” (Lasko, supra, 23 Cal.4th at p. 107; see ibid. [referring to this mental state “[f]or convenience” simply as “ ‘conscious disregard for life’ ”]; Chun, supra, 45 Cal.4th at p. 1182 [same].) We conclude that the Attorney General’s understanding of voluntary manslaughter is correct.
A defendant commits voluntary manslaughter when a homicide that is committed either with intent to kill or with conscious disregard for life—and therefore would normally constitute murder—is nevertheless reduced or mitigated to manslaughter. (See 2 LaFave, Substantive Criminal Law (2d ed. 2003) § 15.2(a), p. 493 [“The usual view of voluntary manslaughter . . . presupposes an intent to kill (or perhaps an intent to do serious injury or to engage in very reckless conduct), holding that in spite of the existence of this bad intent the circumstances may reduce the homicide to manslaughter.”].) We have often described both provocation and unreasonable self-defense as “negating” the malice required for murder or as causing that malice to be “disregarded.” (See, e.g., People v. Milward (2011) 52 Cal.4th 580, 587 [129 Cal.Rptr.3d 145, 257 P.3d 748] [“Malice is negated when the defendant kills as a result of provocation or in ‘imperfect self-defense.’ ”]; People v. Wright (2005) 35 Cal.4th 964, 966 [28 Cal.Rptr.3d 708, 111 P.3d 973] [“[A]n actual, though unreasonable, belief in the need to defend oneself from an imminent threat of death or great bodily injury negates the malice element of murder, reducing the offense to manslaughter.”]; Lasko, supra, 23 Cal.4th at p. 110 [“ ‘[S]ince the homicide must be committed under circumstances which would otherwise be murder, defendant may act with the intent to kill or with any mental state which amounts to “malice”; the malice is negated by the provocation and the offense is mitigated from murder to voluntary manslaughter.’ (2 Wharton’s Criminal Law (15th ed. 1994) § 155, pp. 347-348.)”]; People v. Breverman (1998) 19 Cal.4th 142, 154 [77 Cal.Rptr.2d 870, 960 P.2d 1094] (Breverman) [“[H]eat of passion and unreasonable self-defense reduce an intentional, unlawful killing from murder to voluntary manslaughter by negating the element of malice that otherwise inheres in such a homicide . . . .”]; People v. Freel (1874) 48 Cal. 436, 437 (Freel) [“[W]hen the mortal blow is struck in the heat of passion, excited by *969 a quarrel, sudden, and of sufficient violence to amount to adequate provocation, the law, out of forbearance for the weakness of human nature, will disregard the actual intent and will reduce the offense to manslaughter.”].)
Although we have on occasion employed somewhat different formulations to define the offense of voluntary manslaughter, we have never suggested that it could be committed without either an intent to kill or a conscious disregard for life. In People v. Conley (1966) 64 Cal.2d 310 [49 Cal.Rptr. 815, 411 P.2d 911] (Conley), for example, we developed the doctrine, since abrogated by statute (see People v. Saille (1991) 54 Cal.3d 1103, 1113 [2 Cal.Rptr.2d 364, 820 P.2d 588]; In re Christian S. (1994) 7 Cal.4th 768, 774 [30 Cal.Rptr.2d 33, 872 P.2d 574]), that a defendant’s diminished mental capacity could reduce murder to voluntary manslaughter. We reasoned that malice aforethought requires that a defendant possess an “awareness of the obligation to act within the general body of laws regulating society” and that diminished capacity could therefore preclude a defendant from having the requisite mens rea for murder. (Conley, supra, 64 Cal.2d at p. 322; cf. § 188 [now providing that “[njeither an awareness of the obligation to act within the general body of laws regulating society nor acting despite such awareness is included within the definition of malice”].) We applied similar logic in Flannel to justify the doctrine of imperfect self-defense, reasoning in part that “an individual cannot genuinely perceive the need to repel imminent peril or bodily injury and simultaneously be aware that society expects conformity to a different standard.” (People v. Flannel (1979) 25 Cal.3d 668, 679 [160 Cal.Rptr. 84, 603 P.2d 1] (Flannel).)
The thrust of our reasoning in Conley and Flannel was that the offense constituted voluntary manslaughter instead of murder because a key element of malice aforethought was lacking, not because malice aforethought was actually present but was “negated” or “disregarded” due to some other consideration as in cases like Breverman, supra, 19 Cal.4th at page 154, and Freel, supra, 48 Cal. at page 437. Crucially, however, we did not hold in Conley or Flannel—or in any other case applying similar logic (cf. In re Christian S., supra, 7 Cal.4th at pp. 778-780)—that a killing could be voluntary manslaughter absent proof that the defendant possessed the other basic mental requirements of malice, namely, either intent to kill or conscious disregard for life. Indeed, in Conley and Flannel, we confronted only the question of whether diminished capacity or imperfect self-defense could reduce an intentional killing to voluntary manslaughter. (See Conley, supra, 64 Cal.2d at pp. 318, 323; Flannel, supra, 25 Cal.3d at p. 681.)
Thus, the offenses that constitute voluntary manslaughter—a killing upon a sudden quarrel or heat of passion (§ 192, subd. (a)), a killing in unreasonable self-defense (Flannel, supra, 25 Cal.3d 668), and, formerly, a *970 tilling committed by one with diminished capacity (Conley, supra, 64 Cal.2d 310)—are united by the principle that when a defendant acts with an intent to till or a conscious disregard for life (i.e., the mental state ordinarily sufficient to constitute malice aforethought), other circumstances relating to the defendant’s mental state may preclude the jury from finding that the defendant acted with malice aforethought. But in all of these circumstances, a defendant convicted of voluntary manslaughter has acted either with an intent to till or with conscious disregard for life.
In concluding that intent is not a necessary element of voluntary manslaughter, Lasko and Blakeley did not hold that a defendant may be found guilty of voluntary manslaughter when he tills unintentionally and without conscious disregard for life. Instead, Lasko and Blakeley clarified that not all convictions for voluntary manslaughter must result from killings that would otherwise constitute intentional murder but for the circumstances negating malice. (See Lasko, supra, 23 Cal.4th at pp. 109-111; Blakeley, supra, 23 Cal.4th at p. 89.) Indeed, we were careful in Lasko and Blakeley to state our holding that an unintentional tilling may constitute voluntary manslaughter in terms that expressly acknowledged that the defendants in those cases had been acting “with conscious disregard for life” and with the knowledge that their conduct was life endangering. (Lasko, supra, 23 Cal.4th at p. 104; Blakeley, supra, 23 Cal.4th at p. 85.) It was for this reason that the court in Blakeley observed that it had “no quarrel” with Justice Mosk’s contention in dissent “that a defendant who tills in unreasonable self-defense may sometimes be guilty of involuntary manslaughter.” (Blakeley, supra, 23 Cal.4th at p. 91; see id. at p. 99 (dis. opn. by Mosk, J.).) Because the court had concluded only that “a defendant who, with the intent to kill or with conscious disregard for life, unlawfully tills in unreasonable self-defense is guilty of voluntary manslaughter” (Blakeley, at p. 91), Justice Mosk likewise had “no quarrel with [the majority’s] view” (id. at p. 99, fn. 2 (dis. opn. by Mosk, J.)).
The offenses we have held to constitute voluntary manslaughter are distinct from the offense we consider here. A defendant who has tilled without malice in the commission of an inherently dangerous assaultive felony must have tilled without either an intent to till or a conscious disregard for fife. Such a tilling cannot be voluntary manslaughter because voluntary manslaughter requires either an intent to till or a conscious disregard for life. To the extent that People v. Garcia, supra, 162 Cal.App.4th 18 suggested otherwise, it is now disapproved.
Because a tilling without malice in the commission of an inherently dangerous assaultive felony is not voluntary manslaughter, the trial court could not have erred in failing to instruct the jury that it was. We decline to *971 address defendant’s alternative contention that, because assault with a deadly weapon is not an inherently dangerous felony, the trial court erred in failing to instruct the jury on the theory of involuntary manslaughter recognized in Burroughs, supra, 35 Cal.3d 824. This contention was not considered by the Court of Appeal and is distinct from the question on which we granted review.
CONCLUSION
We reverse the Court of Appeal’s judgment reversing defendant’s murder conviction and remand for further proceedings consistent with this opinion.
Cantil-Sakauye, C. J., Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.