Filed 4/10/14  P. v. De Los Santos CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D062937 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF144610) |
| FERNANDO DE LOS SANTOS, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Riverside, Harry A. Staley, Judge.  (Retired judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Meagan J. Beale and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

Fernando De Los Santos appeals from a judgment convicting him of second degree murder. He raises two claims of instructional error: (1) the jury was improperly told that intoxication could be considered only on the issue of intent to kill, and was not told that intoxication was also relevant to show his subjective state of mind for heat of passion and imperfect self-defense; and (2) the jury should have been instructed on a theory of involuntary manslaughter during the commission of a lawful act with criminal negligence.

We reject these contentions of reversible error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was tried twice for the murder of the victim (Julio Perez). At the first trial, he was charged with first degree premeditated murder; the jury convicted him of second degree murder; and we reversed the judgment on appeal for instructional error on the definition of implied malice for murder. (*People v. De Los Santos* (Aug. 23, 2011, D057750) [nonpub. opn.].) At the second trial, he was charged and convicted of second degree murder. This is the conviction before us in this appeal.

The instructional issues raised on appeal require only a brief recitation of the facts underlying the killing. On the morning of July 8, 2008, the victim's body was found in an alley. The evidence revealed that the victim died from blunt force trauma to his head and neck. The victim's injuries included a fractured nose; bruising on the entire right side of his face with a "tram tracking" pattern indicating his face was hit with an object; a torn ear; abrasions on a large area of the left side of his face and on the back of his head; a large area of soft tissue bruising inside his head; a laceration and abrasion over his

2

"Adam's apple" on his throat; and a fractured larynx. Defendant was identified as the perpetrator, and he eventually admitted to the police that he had assaulted the victim. In a recorded statement, defendant claimed that he and the victim had been drinking together; the victim made sexual advances towards defendant; when defendant refused the advances the victim slapped or punched defendant; defendant punched the victim to defend himself; and the two men began fighting. Defendant stated he was drunk and "pissed off"; when he left the scene the victim was on the ground moving and breathing; he did not think the victim was going to die; he was merely defending himself; and he and probably "went too far" because of the alcohol.

In addition to instructions on the charged offense of second degree murder, the jury was instructed on acquittal based on self-defense; the lesser offense of voluntary manslaughter based on heat of passion or imperfect self-defense; and the lesser offense of involuntary manslaughter based on the commission of battery with criminal negligence. The jury found defendant guilty of second degree murder, and the trial court sentenced him to 15 years to life.

DISCUSSION

I. *General Homicide Principles*

First degree murder is an unlawful killing with malice aforethought, premeditation, and deliberation. (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.) Second degree murder is an unlawful killing with malice, but without the elements of premeditation and deliberation. (*Ibid.*) Malice may be express (intent to kill) or implied (intentional commission of life-threatening act with conscious disregard for life). (*Ibid.*)

3

To reduce the offense to second degree murder, premeditation and deliberation may be negated by intoxication or heat of passion from provocation. (*People v. Carasi* (2008) 44 Cal.4th 1263, 1306; see *People v. Hughes* (2002) 27 Cal.4th 287, 342.)

Even when a defendant has the intent to kill or conscious disregard for life, a homicide may be further reduced to voluntary manslaughter in limited, explicitly defined circumstances that are viewed as negating malice. (*People v. Moye* (2009) 47 Cal.4th 537, 549; *People v. Lasko* (2000) 23 Cal.4th 101, 107-109.) For voluntary manslaughter, malice is deemed to be negated by the defendant's (1) heat of passion arising from provocation that would cause a reasonable person to react with deadly passion, or (2) unreasonable but good faith belief in the need to act in self-defense (imperfect self-defense). (*Ibid.*) Under these two limited circumstances, voluntary manslaughter negates malice even though the lethal act was committed with the intent to kill or conscious disregard for life that otherwise establishes malice. (See *People v. Bryant* (2013) 56 Cal.4th 959, 968; *People v. Rios* (2000) 23 Cal.4th 450, 460-461, 467.)

Heat of passion for voluntary manslaughter has both a subjective and objective component: (1) the defendant must have killed while actually in the heat of passion induced by the provocation, and (2) the provocative conduct must be such that a reasonable person would be have reacted in the heat of passion. (*People v. Moye, supra*, 47 Cal.4th at pp. 549-550.) If the provocation would not cause an average person to react in the heat of passion, but it precluded the defendant from subjectively deliberating and premeditating, the crime is second degree murder. (*People v. Fitzpatrick* (1992) 2 Cal.App.4th 1285, 1295-1296; *People v. Padilla* (2002) 103 Cal.App.4th 675, 678.)

4

Finally, an unlawful homicide without intent to kill and without conscious disregard for life is involuntary manslaughter. (*People v. Butler* (2010) 187 Cal.App.4th 998, 1006.) Involuntary manslaughter can arise from a lawful act, a misdemeanor, or a non-inherently dangerous felony committed with criminal negligence; i.e., aggravated, reckless conduct that creates a foreseeable high risk of death. (*Id*. at pp. 1006, 1008; see *People v. Bryant, supra*, 56 Cal.4th at p. 974 (conc. opn. of Kennard, J.).)

As to voluntary intoxication, in 1995 the Legislature amended the Penal Code to permit use of the defense in murder cases to negate only express malice or premeditation/deliberation, and to disallow its use to negate implied malice. (Former Pen. Code, § 22,[1] current § 29.4; *People v. Timms, supra*, 151 Cal.App.4th at pp. 1297-1298; *People v. Turk* (2008) 164 Cal.App.4th 1361, 1375.) Thus, intoxication can be used to show that a defendant acted out of passion rather than premeditation to reduce a crime from first degree to second degree murder (see *People v. Hughes, supra*, 27 Cal.4th at p. 342), but it cannot be used to negate implied malice and absolve the defendant of second degree murder (*People v. Carlson* (2011) 200 Cal.App.4th 695, 706-707; *People v. Turk, supra*, 164 Cal.App.4th at pp. 1376-1377). Also, intoxication is irrelevant to the

---

[1]	Subsequent unspecified statutory references are to the Penal Code. For convenience, we refer to former section 22 (now renumbered as section 29.4) as "section 22." Section 22 states in relevant part: "(b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought." The legislative history indicated that the 1995 amendment to section 22 (which added the word "express") was designed to eliminate the use of intoxication to negate implied malice. (*People v. Timms* (2007) 151 Cal.App.4th 1292, 1298.)

objective component of heat of passion for voluntary manslaughter; i.e., voluntary manslaughter heat of passion arises when " 'an average, *sober* person would be so inflamed that he or she would lose reason and judgment.' " (*People v. Manriquez* (2005) 37 Cal.4th 547, 585-586, italics added; see *People v. Steele* (2002) 27 Cal.4th 1230, 1253; *People v. Orpeza* (2007) 151 Cal.App.4th 73, 83.)

With these general principles in mind, we consider defendant's claims of instructional error.

## II. *Instructions on Voluntary Intoxication*

Defendant argues the trial court erred, or his counsel provided ineffective representation, because (based on CALCRIM No. 625) the jury was told that it could consider evidence of voluntary intoxication *only* on the issue of whether he had the intent to kill and could not consider the intoxication evidence for any other purpose. He asserts the jury should have been instructed that it could also consider voluntary intoxication when assessing his subjective state of mind for heat of passion and imperfect self-defense. Defendant recognizes that intoxication is irrelevant to the objective, reasonable person component of voluntary manslaughter based on heat of passion, but argues the jury was entitled to consider the intoxication evidence on the issues of (1) whether he was *subjectively* provoked for heat of passion voluntary manslaughter, and (2) whether he *actually* believed he was in imminent danger and needed to use deadly force for imperfect self-defense voluntary manslaughter.

Although a trial court has no sua sponte duty to instruct on intoxication, if it does provide an instruction it must do so correctly. (*People v. Pearson* (2012) 53 Cal.4th 306,

6

325.)  In reviewing a claim the trial court's instructions were incorrect or misleading, we inquire whether there is a reasonable likelihood the jury applied the instructions in an erroneous manner.  (*People v. Butler, supra*, 187 Cal.App.4th at p. 1013.)  We "view the instructions as a whole and consider the effect of the challenged instruction in the context of the entire trial."  (*People v. Mills* (2012) 55 Cal.4th 663, 678.)

CALCRIM No. 625 states:  "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way.  You may consider that evidence only in deciding whether the defendant acted with an intent to kill, or the defendant acted with deliberation and premeditation, . . . or the defendant [acted with some] . . . other specific intent. . . .  [¶] . . . [¶]  You may not consider evidence of voluntary intoxication for any other purpose."  (Italics and brackets in original omitted.)  Because defendant was not charged with first degree murder, there was no issue of intoxication to negate premeditation and deliberation; hence, the jury here was told that intoxication could only be used to negate intent to kill.  This instruction reflects section 22's provision limiting the use of intoxication as a defense to negation of particular mental states, including express malice (intent to kill) but not implied malice.  (See fn. 1, *ante*.)

We will assume arguendo that section 22's limitation on the admissibility of intoxication evidence to negate express malice but not implied malice applies to the elements of second degree murder, but that it does not apply to the distinct malice-negating concept arising from heat of passion and imperfect self-defense for voluntary manslaughter.  (See *People v. Boyer* (2006) 38 Cal.4th 412, 468-469, fns. 39-40; *People*

7

*v. Wright* (2005) 35 Cal.4th 964, 985 (conc. opn. of Brown, J.).)[2] As we shall explain, we conclude there is no reasonable likelihood the jury interpreted the CALCRIM No. 625 instruction to mean it was precluded from considering the intoxication evidence as a general circumstance when evaluating defendant's subjective state of mind for heat of passion or imperfect self-defense.

Based on section 22, CALCRIM No. 625 correctly informed the jurors that intoxication can only negate particular states of mind—here, intent to kill. (*People v. Timms, supra*, 151 Cal.App.4th at p. 1298.) Further, because voluntary manslaughter based on heat of passion is governed by a reasonable person standard and hence ultimately cannot be supported by intoxication (*People v. Orpeza, supra*, 151 Cal.App.4th at p. 83), there was no need to generally instruct the jurors that they could consider intoxication when evaluating this lesser offense.

---

[2]  As noted above, when voluntary manslaughter is established based on heat of passion or imperfect self-defense, malice is deemed to be negated *even though* the defendant factually entertained what would otherwise be express or implied malice. (See *People v. Bryant, supra*, 56 Cal.4th at pp. 968-969 [heat of passion in response to provocation reduces murder to manslaughter because, " 'the law, out of forbearance for the weakness of human nature, will disregard the actual intent' "]; *People v. Rios, supra*, 23 Cal.4th at pp. 461, 467 [imperfect self-defense reduces murder to manslaughter because malice " 'cannot coexist' with an actual belief that the lethal act was necessary to avoid one's own death"].)  Arguably, section 22 precludes a defendant from relying on intoxication to dispel conscious disregard for life and escape a murder conviction, whereas it does not generally preclude a defendant from presenting intoxication evidence merely to shed light on his or her subjective state of mind for purposes of heat of passion or imperfect self-defense.

We note that the concurring justice in *Wright* suggested that voluntary intoxication that creates an entirely delusional fear unsupported by any objective circumstances indicating a threat should not be available to support imperfect self-defense. (*People v. Wright, supra*, 35 Cal.4th at p. 985; see *People v. Mejia-Lenares* (2006) 135 Cal.App.4th 1437, 1454-1455.)  These are not the factual circumstances presented by the defense here.

However, the statement in CALCRIM No. 625 that the jury cannot use intoxication evidence for "any other purpose" apart from deciding intent to kill—when considered in isolation—is overbroad to the extent intoxication can properly be considered when evaluating a defendant's subjective passion or belief in the need to defend for voluntary manslaughter. Nevertheless, when considering the instructions as a whole, it is unlikely the jurors applied the CALCRIM No. 625 limiting instruction when they considered whether defendant was subjectively feeling passion or the need to defend.

The jury was instructed that second degree murder requires express malice (intent to kill) or implied malice (conscious disregard for life). (See CALCRIM No. 520.) It was also told in the language of CALCRIM No. 625 that the sole purpose of the intoxication evidence was to decide the issue of intent to kill. Viewing these instructions together, reasonable jurors would have understood that the limiting language in CALCRIM No. 625 was directed to the alternative malice elements of second degree murder, one that could be negated by intoxication (express malice intent to kill) and the other that could not (implied malice conscious disregard for life).

In contrast, CALCRIM No. 625 makes no mention of how to evaluate heat of passion or imperfect self-defense, and the heat of passion and imperfect self-defense instructions make no mention of negating the effect of intent to kill or conscious disregard for life. (See CALCRIM Nos. 570, 571.) The heat of passion and imperfect self-defense instructions merely specify the requirements that reduce second degree

9

murder to voluntary manslaughter, i.e., provocation and passion, or an unreasonable belief in the need to defend.

Further, the imperfect self-defense instructions explicitly told the jury to consider all the circumstances from the defendant's perspective when determining defendant's subjective beliefs, stating: "In evaluating the defendant's beliefs, *consider all the circumstances as they were known and appeared to the defendant*." (Italics added; see CALCRIM No. 571.) The express instruction to consider all the circumstances as perceived by the defendant would logically include evidence that defendant's perceptions were affected by intoxication. (See *People v. Rios* (2013) 222 Cal.App.4th 704, 727.) Likewise, given this broad directive to consider all the circumstances for the subjective state of mind associated with imperfect self-defense, the jury likely did not feel constrained in considering all the circumstances for purposes of the subjective component of heat of passion.

This conclusion is buttressed by the rebuttal closing arguments, during which the prosecutor told the jury that intoxication could be used only to evaluate express malice intent to kill, but not implied malice conscious disregard for life.[3] The prosecutor made no statement suggesting the jury could not consider intoxication when evaluating

---

[3]    The prosecutor stated: "[T]he instruction tells you that you may consider . . . the evidence, if any, of the defendant's voluntary intoxication only in a limited way. It's only in deciding whether he had an intent to kill. That's known as express malice. Not for any other purpose. [¶] . . . [I]t's only to be considered as to whether or not he had a specific intent in his mind to kill Mr. Perez. It doesn't even come into play as to whether or not he was making a conscious disregard of Mr. Perez's life under the implied malice theory. Because even if the defendant is intoxicated, he can still make a conscious choice to beat Mr. Perez to death."

10

defendant's subjective state of mind for heat of passion or imperfect self-defense manslaughter.

Defendant's citation to *People v. Cameron* (1994) 30 Cal.App.4th 591 does not persuade us to reach a contrary conclusion. The *Cameron* court reversed the judgment based on the trial court's instruction to the jury that voluntary intoxication was not a defense to a general intent crime, including second degree murder based on implied malice. (*Id*. at pp. 599-600.) Rejecting the People's argument that the instructional error was harmless because the defendant relied primarily on heat of passion and imperfect self-defense rather than intoxication, the *Cameron* court also commented: "Intoxication is a circumstance from which the jury might find that defendant's act in response to the provocation should be attributed to passion rather than judgment. [¶] Similarly, . . . [p]roof of intoxication tends to support a claim of honest but mistaken belief in an imminent aggravated assault, providing a reason to account for the defendant's objectively unreasonable belief." (*Id*. at p. 601.)

*Cameron*'s holding with respect to implied malice was abrogated by the 1995 amendment to section 22 which provides that intoxication can be used only to negate express malice, not implied malice. (*People v. Rios, supra*, 222 Cal.App.4th at p. 725.) To the extent *Cameron* indicates that intoxication can support subjective heat of passion and imperfect self-defense, as we stated we are satisfied from the record as a whole that the jury likely felt free to generally consider intoxication as a relevant circumstance when evaluating defendant's subjective state of mind for purposes of heat of passion and

imperfect self-defense, notwithstanding the instruction otherwise limiting the use of intoxication to negation of intent to kill.

For the same reason, we also find no reversible error to the extent defendant contends that the court failed to comply with its sua sponte duties, or his counsel provided ineffective representation, because the jury was not provided a *clarifying* instruction stating that intoxication is relevant to subjective passion or belief in the need to defend. Based on the showing that the jury understood it could consider all the circumstances as they appeared to defendant when evaluating his subjective state of mind for voluntary manslaughter, there is no reasonable probability the outcome would have been different if it had been provided a clarifying instruction on the use of the intoxication evidence for voluntary manslaughter. (See *People v. Pearson, supra*, 53 Cal.4th at p. 325; *People v. Mejia* (2012) 211 Cal.App.4th 586, 635.)

### III. *Instructions on Involuntary Manslaughter*

The court instructed the jury on involuntary manslaughter based on an unlawful killing without intent to kill or conscious disregard for life and during the commission of an *unlawful* act (i.e., battery) with criminal negligence. (See CALCRIM No. 580.) Defendant argues the trial court erred because the jury was not also instructed on involuntary manslaughter during the commission of a *lawful* act; i.e., self-defense. He asserts the evidence could support that he was acting lawfully in self-defense, but that he acted with criminal negligence (i.e., reckless conduct creating a high risk of death) when he "took self defense 'too far,' " thereby warranting instructions on lawful-act involuntary manslaughter. Defendant notes that the instructions on battery state that the defendant

12

was *not* acting in self-defense (see CALCRIM No. 960), and asserts the "jury was never told that it could also convict of involuntary manslaughter if it found Perez's death was a result of [defendant's] lawful act of self-defense, albeit with criminal negligence. . . ."

The contention is unavailing because if defendant went " 'too far' " with his self-defense by acting with criminal recklessness, he was no longer committing a lawful act. Self-defense is permissible only to the extent necessary to defend against the apparent danger. (*People v. Gleghorn* (1987) 193 Cal.App.3d 196, 202.) The jurors were aware of this principle from the instruction on self-defense provided to them, which set forth the requirement that the "defendant used no more force than was reasonably necessary to defend against that danger." (See CALCRIM No. 505.)

Thus, if the jurors thought defendant started out legitimately defending himself but then used force beyond what was reasonably necessary, they would have understood that at that point he was no longer engaging in a lawful act. The unlawful act arising from his continued or escalated assault on the victim falls within the definition of battery, which was defined for the jury as "willfully and unlawfully touched Julio Perez in a harmful way or offensive manner." (See CALCRIM No. 960.) The involuntary manslaughter instruction based on the unlawful act of battery adequately covered the factual scenario wherein defendant started out in self-defense but then recklessly overstepped the bounds of permissible self-defense. There was no instructional error.

DISPOSITION

The judgment is affirmed.

HALLER, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.