Filed 2/4/16  P. v. Velasquez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> FERNANDO VELASQUEZ, <br><br> Defendant and Appellant. | F069497 <br><br> (Super. Ct. No. VCF287331A) <br><br> Tulare County |

APPEAL from a judgment of the Superior Court of Tulare County.  Darryl B. Ferguson, Judge.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## **INTRODUCTION**

At the conclusion of a jury trial, defendant Fernando Velasquez was found guilty of attempted murder (Pen. Code, §§ 187, subd. (a), 664; count 1)[1] and assault with a deadly weapon (§ 245, subd. (a)(1); count 2). The jury found true allegations as to each count that defendant personally used a knife in the commission of his offense (§ 12022, subd. (b)(1)), personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)), and committed the offense on behalf of a criminal street gang (§ 186.22, subd. (b)). The court sentenced defendant to prison on count 1 for a term of life with the possibility of parole, plus consecutive terms of three years for the great bodily injury enhancement and one year for the weapon enhancement.[2] The trial court stated that, because of the gang enhancement, defendant would have to serve a minimum term of 15 years before he was eligible for parole pursuant to section 186.22, subdivision (b)(5). The abstract of judgment, however, erroneously states that defendant is to serve a 15-year determinate sentence pursuant to section 186.22, subdivision (b)(5).

Defendant contends the trial court erred in failing to instruct the jury on the lesser included offense of attempted voluntary manslaughter and on the justification of self-defense. We reject these contentions, affirm the judgment, and remand the case for correction of clerical errors in the abstract of judgment as requested by the parties.

## **FACTS**

Omar Moran belongs to a Sureño gang and was walking home on August 16, 2013. As a truck passed by Moran, someone in the truck "threw a 4," holding up four fingers. The number four is used by Norteño gangs. Moran held up three fingers, a sign used by Sureño gangs. After a few minutes, a red car approached Moran from the

---

[1]    Unless otherwise designated, statutory references are to the Penal Code.

[2]    Defendant's sentence on count 2 was stayed pursuant to section 654.

2.

opposite direction. Moran was not carrying a knife, a gun, or any other weapon. The car stopped about eight feet from him.

Moran explained that the car then made a U-turn and "tried to run … over" Moran. The car missed him by about a foot and a half. Moran did not "throw any signs," and never "threw a 3" at the red car. Four occupants of the car exited and "[t]old [him] gang signs" and "stuff," like "Norte." Moran responded, "South side."

One person began to stab Moran. Moran tried to defend himself by fighting back with his hands. Moran was stabbed six times in his stomach, and suffered stab wounds to "the sides" and hands. Moran tried to go to his house, but fell to the ground. Moran required surgery and was hospitalized for over a month. While in the hospital, Moran identified defendant from a photo lineup as the person who stabbed him. Moran was not sure of his identification and told the jury he did not know if defendant was the person who stabbed him.

At 3:21 p.m. on August 16, 2013, Tulare County Sheriff's Deputy Joel Sanchez was dispatched to an apartment complex to investigate a reported stabbing. Sanchez was flagged down by Antonio Rodriguez and directed to apartment number 60. At the entryway of the apartment, Sanchez saw blood. Sanchez knew defendant, and found him on the couch, bleeding from his right thigh. Sanchez initially thought defendant had been the victim of a crime.

Defendant told Sanchez he was walking home from work, "some Sureño" stabbed him, and a friend picked him up and brought him to Rodriguez's apartment. Defendant said he was stabbed at Road 136 and Avenue 412 in Orosi. Defendant's right eye was swollen or cut. Sanchez had prior contact with defendant in 2012. Defendant told Sanchez then: "I am a BPS Northern. Fuck you cops. I am a home boy and I am going to kick it with my homies at jail."

Hugo Herrera found Moran lying on the ground between 3:30 and 4:00 p.m. Moran could barely talk and was alone. Herrera called his wife, who called 911, and

3.

stayed with Moran until an ambulance arrived. Herrera saw no weapons around where Moran was lying. He did see blood on a water pipe.

Sanchez received a second dispatch at 3:40 p.m. to investigate a stabbing incident at Road 136 and Avenue 412. Sanchez found Moran lying semi-conscious in a ditch after suffering from multiple stab wounds to his torso and both forearms. Moran told Sanchez he was walking when "a vehicle approached." A skinny Hispanic male chased Moran and stabbed him. Although Moran initially indicated he was riding a bicycle, Sanchez did not find one in the area.

Moran said he defended himself by grabbing the assailant's arm and the knife. Moran never indicated that he took the knife away from the assailant. Moran was alone when the attack occurred. Three other males also exited the same car as the assailant. One of the males said, "Fuck him, let's go."

Antonio Rodriguez was associated with the Norteño gang. He pled guilty to being an accessory to a felony, and to committing the crime for the benefit of, at the direction of, or in association with a criminal street gang with the intent to facilitate, promote or assist in criminal conduct by gang members. He agreed to cooperate with law enforcement's investigation and to "testify truthfully in any court proceeding[] arising out of [the] incident." In exchange, Rodriguez received a suspended prison term of five years, three years of probation, and a year in jail.

Rodriguez went to work the day of the incident in his girlfriend's red Toyota Corolla. After finishing work about 2:30 p.m., Rodriguez and another friend, Uriel, met defendant at a market. The three smoked marijuana. Rodriguez and defendant drank beer. Uriel sat in the front passenger seat and defendant sat in the rear passenger seat. Rodriguez thought defendant was intoxicated.

At the intersection of Road 136 and Avenue 412, Rodriguez turned north onto Road 136 where he saw a bald man, Moran, walking in the middle of the street toward their car. Rodriguez was driving slowly and had to swerve away to avoid him. Moran

4.

"was striking" Rodriguez's car and "throwing gang signs." According to Rodriguez, the hand signals were "a Southerner gang sign" and indicated a lack of respect.

Rodriguez passed Moran. Defendant exited the car while it was still moving. Uriel also exited the car.

Rodriguez turned back and watched as defendant went over and began to wrestle with Moran. Rodriguez saw a knife in someone's hand, but could not distinguish whose hand was holding it. The men tried to tackle each other and Uriel threw in two or three kicks at the back of Moran's knees. Moran went to the ground on one knee. Right before Uriel and defendant ran back to Rodriguez's car, defendant was holding Moran by one hand and swung three or four times at him.

Uriel and defendant ran back to the car. Defendant told Rodriguez to take him to the hospital because he had been stabbed. Defendant was holding his left leg. As they drove away, Rodriguez saw Moran still standing his ground. Defendant told Rodriguez not to call the ambulance because defendant believed he had stabbed Moran. Rodriguez drove defendant to the apartment where Rodriguez was staying with his girlfriend.

Detective Rodney Klassen questioned Moran at the hospital the day after the assault. Moran immediately identified defendant as his assailant from a photographic lineup. Klassen also questioned defendant at the hospital. Defendant told Klassen that he was walking down the street when a southern gang member came out swinging a knife and stabbed him in the leg. Defendant denied carrying a knife that day.

Klassen was present when the car Rodriguez drove was searched. A folding Smith and Wesson knife was found in a baby seat in the back. Its blade was locked open. A small fixed-blade knife was found in the front seat. There was a large amount of blood on the back seat of the car as well as a bloody shirt. The folding knife's blade had a red residue smear that looked like blood. The knife was tested for DNA evidence. Two DNA samples on the knife tested positive for Moran and another tested positive for

Moran and defendant. Rodriguez and Uriel were eliminated as contributors of DNA on the knife.[3]

## DISCUSSION

## ATTEMPTED VOLUNTARY MANSLAUGHTER INSTRUCTION

Defendant contends the trial court erred in failing to instruct the jury on attempted voluntary manslaughter because there was substantial evidence that he acted in the heat of passion due to Moran's provocation of defendant by throwing gang signs. Defendant further argues the instruction is required because there was evidence he acted in imperfect self-defense. We reject these arguments.

### Heat of Passion

Murder is the unlawful killing of a human being with malice aforethought. A defendant who commits an intentional and unlawful killing and who lacks malice is guilty of voluntary manslaughter. Generally, the intent to kill constitutes malice; malice is lacking, however, when a defendant acts in a sudden quarrel or heat of passion, or when a defendant kills in unreasonable self-defense. (*People v. Breverman* (1998) 19 Cal.4th 142, 153-154.)

Because heat of passion and unreasonable self-defense reduce an intentional unlawful killing from murder to voluntary manslaughter by negating the malice element of homicide, voluntary manslaughter is considered a lesser necessarily included offense of intentional murder. (*People v. Breverman*, *supra*, 19 Cal.4th at p. 154.) Neither heat of passion nor imperfect self-defense constitute an element of voluntary manslaughter that is affirmatively proven; instead, they are theories of partial exculpation. (*People v. Moye* (2009) 47 Cal.4th 537, 549.) They must be demonstrated.

---

**3** We do not recount the expert testimony presented at trial concerning the gang enhancement. No issue pertaining to that evidence has been raised on appeal.

6.

The provocation that incites the killer to act in heat of passion must be caused by the victim or reasonably believed by the accused to have been engaged in by the victim. The provocation must be enough to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection. (*People v. Gutierrez* (2003) 112 Cal.App.4th 704, 708-709.) Where there is no evidence in the record substantial enough for the jury to consider the lesser included offense of attempted voluntary manslaughter under a theory of sudden quarrel or heat of passion, the trial court has no duty to so instruct. (*Id.* at p. 709.) Substantial evidence is evidence sufficient to warrant consideration by the jury, it is not "'"'any evidence … no matter how weak.'"'" (*People v. Wilson* (2005) 36 Cal.4th 309, 331, italics omitted.)

Heat of passion has objective and subjective components. The victim's conduct must have been sufficiently provocative to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection. (*People v. Enraca* (2012) 53 Cal.4th 735, 759 (*Enraca*); *People v. Moye*, *supra*, 47 Cal.4th at pp. 549-550.) "The standard is not the reaction of a 'reasonable gang member.'" (*Enraca*, *supra*, 53 Cal.4th at p. 759; see *People v. Humphrey* (1996) 13 Cal.4th 1073, 1087.) Subjectively, the accused must be shown to have killed while under the influence of a strong passion induced by such provocation. (*Enraca*, *supra*, 53 Cal.4th at p. 759.)

We agree with the People that there was no evidence the assault and stabbing of Moran was anything other than a response to a rival gang member flashing a sign which defendant interpreted as disrespectful to defendant's gang. As noted above, the objective standard of heat of passion is not that of a reasonable gang member, it is the response of an ordinary person of average disposition. Reasonable people do not become homicidally enraged when perceiving a fleeting challenge to a gang. (*People v. Avila* (2009) 46 Cal.4th 680, 706.) Here, the victim's act of throwing a gang sign was not sufficiently provocative to warrant an instruction on attempted voluntary manslaughter.

7.

### *Imperfect Self-Defense*

Defendant further argues the instruction was nevertheless necessary because there was evidence from which it could be implied he acted in imperfect self-defense. The instruction should be given whenever there is evidence from which the jury could reasonably conclude the defendant acted in an unreasonable but good faith belief he or she had to act in self-defense. (*People v. Rogers* (2006) 39 Cal.4th 826, 882-883.) Imperfect self-defense mitigates rather than justifies homicide or, in this case, attempted homicide, by negating the element of malice. (*People v. Bryant* (2013) 56 Cal.4th 959, 968.) As previously stated, substantial evidence, however, is not any evidence no matter how weak. It is evidence from which a reasonable jury could conclude the defendant was guilty only of manslaughter. (*People v. Moye*, *supra*, 47 Cal.4th at p. 553.)

The evidence defendant asserts as supporting his claim of imperfect self-defense is his own knife wound. Defendant told Sanchez someone attacked him and told Klassen in the hospital that he was attacked by a southern gang member wielding a knife who stabbed him in the leg. Defendant said he was walking when attacked, and only got a car ride after he was assaulted. Defendant, however, failed to clearly identify his attacker. This evidence is weak, uncorroborated, and inconsistent with the testimony of Rodriguez, Moran, and the investigators. It is therefore insufficient to warrant an attempted voluntary manslaughter instruction based on imperfect self-defense.

The evidence adduced at trial was that after Moran "thr[ew] gang signs," defendant became so enraged that he jumped out of the car while it was still moving and attacked Moran with a knife. Although Rodriguez could not see who was holding the knife as Moran and defendant wrestled, after Moran was kicked by Uriel and fell to his knee, defendant slashed at Moran two or three times. A bloody knife was found in Rodriguez's car with DNA from Moran and defendant. No knife was found on Moran or around where he was lying in the road. Although there were two knives found in the car Rodriguez was driving, only one had blood on it.

The evidence further presented that defendant attacked Moran, the two wrestled briefly, and Moran suffered multiple knife wounds to his torso and his arms. Defendant suffered a single wound to his leg. Moran undeniably resisted defendant's attack. There is no evidence to support a theory that Moran escalated defendant's knife attack, even though defendant also suffered a knife wound. Imperfect self-defense does not apply if a defendant's conduct creates circumstances where the victim is legally justified in resorting to self-defense against the defendant. The doctrine cannot be invoked by a defendant who, through his own wrongful conduct—such as initiating a physical assault or the commission of a felony—has created circumstances under which his adversary's attack or pursuit is legally justified. (*In re Christian S.* (1994) 7 Cal.4th 768, 773, fn. 1.) As the initial aggressor, defendant may not rely on imperfect self-defense. (*People v. Seaton* (2001) 26 Cal.4th 598, 664; *People v. Frandsen* (2011) 196 Cal.App.4th 266, 271-272.)

Given the evidence, no reasonable jury could conclude defendant committed only attempted voluntary manslaughter based on either heat of passion or imperfect self-defense.

## SELF-DEFENSE INSTRUCTION

Defendant contends the trial court erred in failing to sua sponte instruct the jury on on self-defense with CALCRIM Nos. 3470 and 3471.[4] We disagree.

---

**4** Combined, CALCRIM Nos. 3470 and 3471 are lengthy. In relevant part, CALCRIM No. 3470 provides:

"Self-defense is a defense to _____ <*insert list of pertinent crimes charged*>. The defendant is not guilty of (that/those crime[s]) if (he/she) used force against the other person in lawful (self-defense/ [or] defense of another). The defendant acted in lawful (self-defense/ [or] defense of another) if;

"1. The defendant reasonably believed that (he/she/ [or] someone else/ [or] _____ <*insert name of third party*>) was in

9.

imminent danger of suffering bodily injury [or was in imminent danger of being touched unlawfully];

"2.  The defendant reasonably believed that the immediate use of force was necessary to defend against that danger;

"AND

"3.  The defendant used no more force than was reasonably necessary to defend against that danger."

CALCRIM No. 3471 states:

"A person who (engages in mutual combat/ [or who] starts a fight) has a right to self-defense only if:

"1.  (He/She) actually and in good faith tried to stop fighting;

"[AND]

"2.  (He/She) indicated, by word or by conduct, to (his/her) opponent, in a way that a reasonable person would understand, that (he/she) wanted to stop fighting and that (he/she) had stopped fighting(;/.)

"*<Give element 3 in cases of mutual combat.>*

"[AND

"3.  (He/She) gave (his/her) opponent a chance to stop fighting.]

"If the defendant meets these requirements, (he/she) then had a right to self-defense if the opponent continued to fight.

"[However, if the defendant used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend (himself/herself) with deadly force and was not required to try to stop fighting(,/ or) communicate the desire to stop to the opponent[, or give the opponent a chance to stop fighting].]

"[A fight is *mutual combat* when it began or continued by mutual consent or agreement.  That agreement may be expressly stated or implied and must occur before the claim to self-defense arose.]"

For a killing to be in self-defense, the defendant must actually and reasonably believe in the need to defend himself or herself. If the belief subjectively exists but is objectively unreasonable, there is imperfect self-defense which negates the element of malice. (*People v. Humphrey*, *supra*, 13 Cal.4th at p. 1082.) To constitute perfect self-defense, the belief must be objectively reasonable. The circumstances must be sufficient to excite the fears of a reasonable person. Fear of future harm—no matter how great the fear and likelihood—does not suffice. The defendant's fear must be of imminent danger to life or great bodily injury. (*People v. Humphrey*, *supra*, 13 Cal.4th at p. 1082; *People v. Romero* (1999) 69 Cal.App.4th 846, 853; see §§ 197 & 198.) In determining whether the defendant acted as a reasonable person would act, the jury must consider all the facts and circumstances. (*People v. Humphrey*, *supra*, 13 Cal.4th. at p. 1083.)

During the discussion between the court and counsel concerning jury instructions, the prosecutor asked that no self-defense instruction be given. Defense counsel agreed that, even if Moran had come into possession of the knife during the attack, there was no evidence of self-defense. Defendant's trial counsel accurately summarized the state of the evidence and properly declined a self-defense instruction. There was no evidence presented that Moran escalated the violence. The overwhelming evidence presented at trial was that defendant initiated and continued the attack.

Finally, even if there was evidence of perfect or imperfect self-defense, the failure to give instructions on either theory was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18. The only evidence supporting defendant's perfect and imperfect self-defense theories was his own knife wound and his statement to investigators that a southern gang member attacked him. Again, he not only failed to identify Moran as his attacker, he did not testify to this point at trial. The testimony of Moran, Rodriguez, and the investigators all pointed to defendant as the initiator and sole attacker of Moran. There was no evidence Moran was armed. Blood on the knife found in the car Rodriguez was driving had the DNA of Moran and defendant. Given the

11.

overwhelming evidence adduced at trial, we find beyond a reasonable doubt that no jury could reasonably find defendant was initially attacked by the victim or that the victim escalated whatever violence defendant initiated.  (*Ibid*.)

## CLERICAL ERROR

In addition to his indeterminate sentence, the trial court sentenced defendant to a determinate term of three years for the great bodily injury enhancement plus a consecutive term of one year for personally using a knife.  The trial court stated that because of the gang enhancement, defendant would have to serve a minimum term of 15 years before he was eligible for parole pursuant to section 186.22, subdivision (b)(5).  The court stated defendant's total prison term was life plus four years with 15 years prior to being eligible for parole.  The abstract of judgment, however, states defendant's total determinate sentence is 19 years based on the four years described above plus an additional 15 years pursuant to section 186.22, subdivision (b)(5).  Defendant contends, and the People concede, the abstract of judgment erroneously states the trial court's sentence and must be remanded for amendment.  We agree.

Clerical error can be corrected at any time, including on appeal.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *In re Candelario* (1970) 3 Cal.3d 702, 705.)  The error in the abstract of judgment does not follow the trial court's judgment announced during the sentencing hearing or the minute order of the proceedings.  It therefore constitutes clerical error and the case is remanded for preparation of an amended abstract of judgment.

## DISPOSITION

The case is remanded for the trial court to amend the abstract of judgment to reflect that, pursuant to Penal Code section 186.22, subdivision (b)(5), defendant is not eligible for parole until a minimum of 15 calendar years have been served, and defendant's total determinate sentence is four years.  The trial court shall forward the amended abstract to the appropriate authorities.

12.

The judgment is affirmed.

_____
DETJEN, J.

WE CONCUR:

_____
GOMES, Acting P.J.

_____
POOCHIGIAN, J.

13.