Filed 8/18/20  P. v. Sanchez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. BRYAN SANCHEZ, Defendant and Appellant. | B300319 (Los Angeles County Super. Ct. No. BA272661-02) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, George G. Lomeli, Judge.  Reversed and remanded with directions.

Kathy R. Moreno, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Amanda V. Lopez and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Following a lengthy joint jury trial, Bryan Sanchez and three codefendants were found guilty of the murder of Juan Monsivais and the attempted premeditated murder of Manuel De La Rosa in a gang-related drive-by shooting on September 6, 2003. Sanchez was sentenced to an aggregate indeterminate state prison term of 35 years to life for the murder of Monsivais and the attempted murder of De La Rosa with the associated criminal street gang enhancements. On direct appeal this court affirmed those convictions. (*People v. Flores* (July 19, 2010, B211207) [nonpub. opn.].)

On May 28, 2019 Sanchez petitioned for resentencing under Penal Code section 1170.95[1] directed to his conviction for murder. The superior court summarily denied the petition without first appointing counsel, ruling Sanchez was ineligible for resentencing because the evidence at trial and our opinion on appeal demonstrated Sanchez had either aided and abetted the actual shooter (Rafael Fuentes) with the intent to kill or had acted as a major participant in the crimes and with a reckless indifference to human life. The court also ruled Sanchez was not entitled to relief because section 1170.95 is unconstitutional.

We reverse the postjudgment order and remand for the superior court to appoint counsel for Sanchez and to consider his petition as it relates to his conviction for second degree murder in accordance with the procedures described in this court's opinion in *People v. Verdugo* (2020) 44 Cal.App.5th 320, review granted March 18, 2020, S260493 (*Verdugo*).[2] We affirm the order to the

---

[1] Statutory references are to this code.

[2] The Supreme Court in *Verdugo, supra,* S260493 ordered briefing deferred pending its disposition of *People v. Lewis* (2020)

2

extent it denied relief for the attempted murder conviction for the reasons set forth in our decision in *People v. Lopez* (2019) 38 Cal.App.5th 1087, review granted November 13, 2019, S258175 (*Lopez*).[3]

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Sanchez's Conviction for Murder and Attempted Murder*

   a. *The drive-by shooting*

As described in our 2010 opinion and a subsequent nonpublished opinion denying Sanchez's petition for a writ of habeas corpus (*In re Sanchez* (July 23, 2012, B218637)), the evidence at trial established that Sanchez, his girlfriend Jasmin Rossier and Fuentes were members of the Red Shield clique of

---

43 Cal.App.5th 1128, review granted March 18, 2020, S260598. The Court limited briefing and argument in *People v. Lewis* to the following issues: "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95? (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)?"

[3]     The Supreme Court in *Lopez, supra,* S258175 limited review to the following issues: "(1) Does Senate Bill No. 1437 (Stats. 2018, ch. 1015) apply to attempted murder liability under the natural and probable consequences doctrine? (2) In order to convict an aider and abettor of attempted willful, deliberate and premeditated murder under the natural and probable consequences doctrine, must a premeditated attempt to murder have been a natural and probable consequence of the target offense? In other words, should *People v. Favor* (2012) 54 Cal.4th 868 be reconsidered in light of *Alleyne v. United States* (2013) 570 U.S. 99 and *People v. Chiu* (2014) 59 Cal.4th 155?"

the 18th Street gang, the largest Hispanic criminal street gang in the United States. Edgar Flores was a member of the Grandview clique of the 18th Street gang. The two cliques were known to cooperate in joint gang activities. The 18th Street gang's rivals included the Temple Street gang.

The principal trial witnesses regarding the drive-by shooting were Norberto Pacheco, a member of the Red Shield clique, and Santos and David Kuk, members of the Grandview clique. On Saturday, September 6, 2003, while members of the Red Shield and Grandview cliques were drinking beer and socializing together, someone (Sanchez, according to Pacheco) suggested they go on a mission to exact revenge against the Temple Street gang, apparently because one of its members had assaulted Santos Kuk.

Sanchez drove a stolen minivan. Rossier, Flores, Fuentes and Eric Vasquez, another 18th Street gang member, as well as the Kuk brothers, were inside the minivan. The group traveled to a commercial location where Pacheco provided them with two guns and then left the group. Flores took the shotgun, and Fuentes the rifle.

At one point the group saw a rival gang member who had been identified as a target, but Sanchez said not to shoot because there was a woman with a baby nearby. Sanchez continued to drive around the neighborhood for several hours looking for "enemies" to shoot. As the minivan drove past the Kuk brothers' home, which was in Temple Street gang territory, several Temple Street gang members were seen drinking across the street. After some discussion inside the minivan, Fuentes pulled out the rifle, shouted a derogatory comment and fired repeatedly out the front passenger side window. Flores tried, but was

unable, to get the shotgun to fire out the window of the minivan's side door. Sanchez then drove the minivan away. Pacheco testified that Sanchez, Rossier, Flores and Fuentes all spoke to him after the incident and acknowledged their participation in the shooting.

Monsivais, who had been drinking outside his home with several of his cousins and a friend (at least one of whom was a Temple Street gang member), was shot and killed by a single gunshot wound to the back. De La Rosa was hit by bullets in the chest and hand and spent several days in the hospital after the shooting.

### b. *The trial: instructions and verdict*

In a second amended information Sanchez, Fuentes, Flores, Rossier and Pacheco[4] were charged with one count of first degree murder (§ 187, subd. (a)) and one count of attempted willful, deliberate and premeditated murder (§§ 664, 187, subd. (a)). The information specially alleged with respect to these two counts that the offenses had been committed for the benefit of a criminal street gang (§ 186.22, subd. (b)), that Fuentes had personally and intentionally discharged a firearm causing death or great bodily injury (§ 12022.53, subds. (b)-(d)) and that a principal had personally discharged a firearm within the meaning of that section (§ 12022.53, subds. (b)-(e)).

Using CALCRIM No. 400 the court instructed the jury, in part, "A person may be guilty of a crime in more than one way.

---

[4] Prior to trial Pacheco pleaded guilty to voluntary manslaughter with a provisional sentence of 17 years in state prison, subject to his agreement to testify truthfully against the remaining defendants.

5

He or she may have directly committed the crime. I will call that person the perpetrator. Additionally, he or she may have aided and abetted a perpetrator, who directly committed the crime. . . . [¶] Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the crime."

Immediately after instructing on the elements necessary to prove direct aiding and abetting (CALCRIM No. 401), the court continued, "There is another way in which a person may be guilty of a crime. [¶] To prove a particular defendant is guilty of murder as charged in Count 1 and attempted murder as charged in Count 2 based upon the theory of 'a natural and probable consequence,' the People must prove beyond a reasonable doubt that: [¶] 1. The defendant committed the crime of assault with a firearm . . . ; [¶] 2. During the commission of the assault with a firearm, a coparticipant in that assault with a firearm committed the crimes of murder and attempted murder, respectively; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the murder and attempted murder, respectively were a natural and probable consequence of the commission of the assault with a firearm." (CALCRIM No. 403.)

The jury found Sanchez, Rossier and Flores guilty of second degree murder; Fuentes, the shooter, was found guilty of first degree murder. All four codefendants were convicted of attempted willful, deliberate and premeditated murder. The jury found true the allegations both offenses had been committed to benefit a criminal street gang, but as to Sanchez found not true

6

the various firearm-use allegations. These convictions were affirmed on appeal.[5]

   2.  *Senate Bill No. 1437 and Sanchez's Petition for Resentencing*

   a.  *Senate Bill No. 1437 and the section 1170.95 petition procedure*

Senate Bill No. 1437 (2017- 2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437), effective January 1, 2019, amended the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder through amendments to sections 188 and 189. New section 188, subdivision (a)(3), provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."

New section 189, subdivision (e), in turn, provides with respect to a participant in the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), in which a death occurs—that is, as to those crimes that provide the basis for the charge of first degree felony murder—that an individual is liable for murder "only if one of the following is

---

[5]     Sanchez and another gang member, Pedro Aguilar, were also found guilty of conspiracy to commit murder arising from a gang-related incident two days after the drive-by shooting. We reversed the conspiracy convictions because the trial court had failed to instruct the jury conspiracy to commit assault with a firearm was a lesser included offense of conspiracy to commit murder as alleged in the accusatory pleading.

7

proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill 1437 also permits, through new section 1170.95, an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. The petition must include: "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1); see *Verdugo*, *supra*, 44 Cal.App.5th at pp. 326-327.)

If any of this required information "is missing and cannot be readily ascertained by the court, 'the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information.' (§ 1170.95, subd. (b)(2).)" (*Verdugo*, *supra*, 44 Cal.App.5th at p. 327.) If, however, "the petition contains all required information, section 1170.95, subdivision (c), prescribes a two-step process for the court to determine if an order to show cause should issue: 'The court shall review the petition and determine if the petitioner has made a prima facie showing that

the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.'" (*Ibid.*)

Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1); see *Verdugo, supra,* 44 Cal.App.5th at p. 327.) At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).) The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens. (See *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, review granted Mar. 18, 2020, S260598.)

### b. *Sanchez's section 1170.95 petition*

In May 2019 Sanchez petitioned for resentencing under newly enacted section 1170.95. In his petition on the Re:Store Justice form (see *Verdugo, supra,* 44 Cal.App.5th at p. 324 & fn. 2), Sanchez checked boxes declaring an information had been filed against him allowing the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; at trial he had been convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; and he could not now be convicted of first or second degree murder because of the amendments to sections 188 and 189. He also checked the

9

box requesting appointment of counsel for the resentencing process. The petition did not refer to Sanchez's conviction for attempted murder.

### 3. *The Superior Court's Ruling Denying the Petition*

The superior court summarily denied Sanchez's petition based on its review of "the overall court record." After briefly summarizing the statement of facts from our opinion on appeal, the court explained, "The overall evidence not only reflected that the petitioner played an active role in the drive-by shooting as the driver of the stolen minivan which not only facilitated the shooting, but the escape thereafter, as well as the petitioner's role in the planning that preceded the crime in which he specifically participated in the discussion of the mission that was to occur. Therefore, it is clear from all the evidence presented that the petitioner is not entitled to resentencing relief under [section 1170.95] as he either acted with an intent to kill when he aided and abetted the murder and attempted murder of the underlying victims and/or was a major participant who acted with reckless indifference to human life."

As an additional ground for denying the petition, the court ruled Senate Bill 1437 and section 1170.95 are unconstitutional because Senate Bill 1437 impermissibly amended two California initiatives, Propositions 7 (the Death Penalty Act, approved by the voters in November 1978) and 115 (the Crime Victims Justice Reform Act, approved by the voters in June 1990); violated the California Constitution (as amended by Proposition 9 in 2008, the Victims' Bill of Rights Act of 2008, commonly known as Marsy's Law) insofar as it purported to vacate final judgments in criminal cases; and violated the separation of powers doctrine by infringing on core judicial functions.

10

## DISCUSSION

### 1. *Section 1170.95 Is Constitutional*

Sanchez contends, and the Attorney General agrees, the superior court erred in holding, as an independent ground for denying Sanchez's petition, that section 1170.95, as enacted through Senate Bill 1437, was unconstitutional. In a comprehensive analysis of Propositions 7 and 115 and Senate Bill 1437, as well as the separation of powers doctrine and victims' rights to finality of judgments as protected in Marsy's Law, our colleagues in Division Two of the Fourth District in *People v. Johns* (2020) 50 Cal.App.5th 46, 54-55 rejected the reasoning employed by the superior court in this case and held Senate Bill 1437 is constitutional.

All other courts of appeal that have considered any of these grounds for a constitutional attack on Senate Bill 1437 have likewise rejected them. (See, e.g., *People v. Prado* (2020) 49 Cal.App.5th 489; *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835; *People v. Bucio* (2020) 48 Cal.App.5th 300; *People v. Solis* (2020) 46 Cal.App.5th 762; *People v. Cruz* (2020) 46 Cal.App.5th 740; *People v. Lamoureux* (2019) 42 Cal.App.5th 241.) We find the reasoning in these cases compelling and adopt it as our own.

### 2. *The Superior Court Erred in Ruling Sanchez Was Ineligible for Relief as a Matter of Law*

In addition to its flawed constitutional analysis, the superior court's denial of Sanchez's petition as it relates to his conviction for murder was based on a fundamental misunderstanding of Senate Bill 1437's amendments to sections 188 and 189. As discussed, section 188,

subdivision (a)(3), precludes a conviction for murder of anyone who did not act with "malice aforethought" except in cases of felony murder, as specified in section 189, subdivision (e), and specifically prohibits imputing malice based solely on participation in a crime. Section 189, subdivision (e)(3), however, provides an aider and abettor of one of the felonies listed in section 189, subdivision (a), who is not the actual killer, may be convicted under the felony-murder rule without proof of an intent to kill (that is, without proof of "malice") if that person was "a major participant in the underlying felony and acted with reckless indifference to human life." This single exception to the prohibition of imputing malice applies only to cases tried under the felony-murder rule, not the natural and probable consequences doctrine.

Here, the jury was instructed Sanchez could be found guilty of Monsivais's murder if he had directly aided and abetted the murder—that is, if he knew Fuentes intended to commit murder and had the specific intent to aid and abet Fuentes in committing that crime—or had aided and abetted an assault with a firearm and a reasonable person would have known that the commission of murder was a natural and probable consequence of that aggravated assault. There was no felony-murder instruction, nor could there have been.[6]

---

[6] Aggravated assault cannot provide the basis for a charge of felony murder: "When the underlying felony is assaultive in nature . . . the felony merges with the homicide and cannot be the basis for a felony-murder instruction." (*People v. Chun* (2009) 45 Cal.4th 1172, 1200; see *People v. Bryant* (2013) 56 Cal.4th 959, 966.)

12

The superior court was correct that compelling evidence was presented at trial that Sanchez was guilty of murder as an aider and abettor under one of the two theories presented to the jury.[7] But only the former theory survives Senate Bill 1437's amendments to the Penal Code.

As we explained in *Verdugo*, after receiving a facially sufficient petition but before appointing counsel for the petitioner, the superior court may examine the readily available portions of the record of conviction, including any appellate opinion affirming the conviction, to determine whether the petitioner has made a prima facie showing that he or she could not be convicted of first or second degree murder following the changes made to sections 188 and 189 and thus falls within the provisions of section 1170.95. (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330, 332.) We cautioned, however, because at this stage the court is only evaluating whether there is a prima facie showing the petition falls within the provisions of the statute, "if the petitioner's ineligibility for resentencing under section 1170.95 is not established as a matter of law by the record

---

[7]     As the superior court observed, in denying Sanchez's petition for a writ of habeas corpus based on ineffective assistance of counsel after issuing an order to show cause, we concluded his lawyer's errors were not prejudicial: "[T]he evidence of Sanchez's participation in the drive-by shooting was extremely strong, and his alibi defense unconvincing even without regard to the harmful effects of Graysen's errors. Sanchez was constitutionally entitled to a better defense; but we are nevertheless convinced, based on our thorough review of the trial record, he received a fundamentally fair trial and his convictions for murder and attempted murder are reliable." (*In re Sanchez, supra*, B218637.)

13

of conviction, the court must direct the prosecutor to file a response to the petition, permit the petitioner (through appointed counsel, if requested) to file a reply and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Id.* at p. 330.)

Based on his petition and the available portions of the record of conviction, Sanchez has made a prima facie showing he falls within the provisions of section 1170.95. Even if he was a major participant in an aggravated assault and acted with reckless indifference to human life, a conviction for murder under the natural and probable consequences doctrine is no longer viable. Accordingly, as the Attorney General concedes, Sanchez is entitled to appointment of counsel and to a determination, after briefing by both sides, whether he has made a prima facie showing that he is entitled to relief, as provided in section 1170.95, subdivision (c).

3. *Section 1170.95 Does Not Apply to Attempted Murder*

In *Lopez* we held Senate Bill 1437 does not modify the law of attempted murder, explaining there was nothing ambiguous in the language of the legislation, which, in addition to omitting any reference to attempted murder, specifically identifies its purpose as the need "'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*Lopez, supra,* 38 Cal.App.5th at p. 1104, quoting Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Dennis* (2020) 47 Cal.App.5th 838, 844,

review granted July 29, 2020, S262134 ["Senate Bill 1437 does not apply to convictions for *attempted* murder, as opposed to murder"]; *People v. Munoz* (2019) 39 Cal.App.5th 738, 753, review granted Nov. 26, 2019, S258234 ["Senate Bill 1437 does not apply to the offense of attempted murder"].)

We added that the Legislature's obvious intent to exclude crimes other than murder was underscored by the language of section 1170.95, which in subdivision (a), "authorizes only those individuals 'convicted of felony murder or murder under a natural and probable consequences theory' to petition for relief; and the petition must be directed to 'the petitioner's murder conviction.' Similarly, section 1170.95, subdivision (d)(1), authorizes the court to hold a hearing to determine whether to vacate 'the murder conviction.'" (*Lopez*, *supra*, 38 Cal.App.5th at pp. 1104-1105.)

Our colleagues in the Fifth District in *People v. Larios* (2019) 42 Cal.App.5th 956, review granted February 26, 2020, S259983, and *People v. Medrano* (2019) 42 Cal.App.5th 1001, review granted March 11, 2020, S259948, disagreed with our conclusion that Senate Bill 1437's amendments to sections 188 and 189 do not apply to attempted murder under the natural and probable consequences theory of liability. (*Larios*, at pp. 966-967; *Medrano*, at p. 1015.) But they, too, agreed "section 1170.95 provides no relief for the crime of attempted murder." (*Larios*, at p. 961; accord, *Medrano*, at p. 1008.) Sanchez advances no persuasive reason for us to depart from the reasoning of these cases.

Finally, as part of our analysis in *Lopez*, we also rejected the argument made by Sanchez that limiting the reform of aider and abettor liability under the natural and probable

15

consequences doctrine to instances where the nontarget offense is murder violates equal protection. We first held individuals convicted of murder and those convicted of attempted murder (or other nontarget offenses) under the natural and probable consequences doctrine are not similarly situated. (*Lopez*, *supra*, 38 Cal.App.5th at pp. 1107-1108.) Even if they were, we continued, the limitation of Senate Bill 1437 to individuals convicted of murder under the natural and probable consequences doctrine is subject to rational basis review (*Lopez*, at p. 1110), and constitutionally adequate, plausible reasons exist for the Legislature's decision (*id.* at p. 1111). Nothing in Sanchez's briefing indicates the constitutional analysis in *Lopez* should be reconsidered.

## DISPOSITION

The postjudgment order denying Sanchez's petition for resentencing is reversed. The cause is remanded with directions to appoint counsel for Sanchez and to conduct further proceedings pursuant to section 1170.95 with respect to Sanchez's conviction for second degree murder.

PERLUSS, P. J.

We concur:

SEGAL, J.             FEUER, J.

16