Filed 1/22/24  P. v. Rhynes CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>BOBBIE DALE RHYNES,<br><br>  Defendant and Appellant. | F085253<br><br>(Super. Ct. No. BF161828A)<br><br>**OPINION** |

-ooOoo-

### THE COURT\*

APPEAL from a judgment of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

Andrea Keith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Ismah Ahmad, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Hill, P. J., Detjen, J. and Smith, J.

## INTRODUCTION

In 2015, appellant Bobbie Dale Rhynes was charged with the first degree murder of Carl Everett Woolwine (Pen. Code,[1] § 187, subd. (a), count 1). The information further alleged that Rhynes personally and intentionally discharged a firearm proximately causing great bodily injury or death (§ 12022.53, subd. (d)). Thomas Ray Ertz and Joan Allaine Noble were charged with being accessories after the fact (§ 32, counts 2 & 3).

In 2017, following a hung trial, Rhynes plead no contest to voluntary manslaughter (§ 192, subd. (a)) and admitted to using a firearm in the commission of the offense (§ 12022.5, subd. (a).) The trial court sentenced Rhynes to an aggregate term of 14 years in state prison.

In 2022, Rhynes filed a petition for resentencing under former section 1170.95 (now renumbered as section 1172.6). The trial court appointed counsel to represent Rhynes and the prosecutor filed an opposition to Rhynes's petition. Following argument by the parties, the trial court denied Rhynes's petition at the prima facie stage, finding him ineligible for resentencing relief as a matter of law.

On appeal, Rhynes contends that the trial court erred in denying his petition at the prima facie stage. We conclude that the record of conviction shows, without factfinding involving the weighing of evidence of exercise of discretion, that Rhynes was convicted as the actual killer. He is therefore ineligible for resentencing relief as a matter of law. We therefore affirm.

## PROCEDURAL HISTORY

On June 9, 2017, pursuant to an amended information, the Kern County District Attorney charged Rhynes with the murder of Carl Everett Woolwine (§ 187, subd. (a); count 1) and voluntary manslaughter (§ 192, subd. (a); count 2). The information further

---

[1] All further undefined statutory citations are to the Penal Code unless otherwise indicated.

2.

alleged that Rhynes had personally and intentionally discharged a firearm which caused great bodily injury or death during the commission of count 1 (§ 12022.53, subd. (d)), and that Rhynes had personally used a firearm (§ 12022.5, subd. (a)) in the commission of count 2.

That same day, Rhynes pled no contest to voluntary manslaughter (count 2) and admitted the section 12022.5, subdivision (a) firearm use enhancement. In view of his plea, count 1 was dismissed.

On June 22, 2017, the trial court sentenced Rhynes to the upper term of 11 years for voluntary manslaughter, and a term of three years for the section 12022.5, subdivision (a) firearm enhancement.

On June 6, 2022, Rhynes filed a petition for resentencing under former section 1170.95. The prosecutor filed an opposition to the petition and requested summary denial, arguing that Rhynes was tried and convicted as the actual killer.

On October 12, 2022, the trial court held a hearing on Rhynes's petition. Trial counsel submitted on the petition filed. The trial court denied the petition, explaining that because Rhynes had admitted to being the actual killer, he was unable to make a prima facie showing for relief under section 1172.6.[2]

A timely notice of appeal followed.

**STATEMENT OF FACTS**

At his change of plea hearing, Rhynes stipulated to the preliminary hearing transcript as the factual basis for his plea. The following statement of facts is derived from the preliminary hearing transcript:

---

[2] The Legislature renumbered section 1170.95 to section 1172.6 without substantive change, effective June 30, 2022. (Stats. 2022, ch. 58, § 10; *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2.)

Rhynes, Ertz, Noble, Nicholas Cates, and Woolwine, worked together at the Alta Sierra Ski Resort.  Ertz and Noble were in a dating relationship.

On the afternoon of October 10, 2015, Ertz, Cates, Rhynes, and Woolwine drove to a hunting trail.  Cates dropped Ertz and Rhynes off, and he and Woolwine went to a higher area of the sky resort and parked to observe the area.

During the excursion, Woolwine remarked to Cates "that he wanted to go back to the office and watch Noble work."  Cates thought that the comment was strange so he went down the mountain to tell Noble what Woolwine had said.  Woolwine subsequently returned to a maintenance shop at the resort.

At some point, Cates picked up Rhynes and Ertz and brought them back to the office where Noble was working.  Cates told Rhynes and Ertz about Woolwine's comment.  Rhynes appeared upset.  He suggested, "let's go bury [Woolwine]."  Rhynes instructed Cates to bring Woolwine back to the office area, and Cates complied.

When Cates returned, Woolwine asked Cates if they saw anything to shoot while they were hunting.  Rhynes commented that they had not seen any bucks, but "he had his eye on something."

Eventually, when some vehicles in the parking lot nearby left, Rhynes told Cates "let's go."  Cates began to feel sick.  He did not want to go with the group because "he knew what they were going to do."

Cates told Rhynes that he was not feeling well and that he needed to use the restroom.  Rhynes and Ertz drove off with Woolwine while Cates and Noble remained at the office.

When they arrived at the maintenance shop building, Ertz confronted Woolwine about the comment Woolwine made about Noble.  Ertz told sheriff's deputies that as he and Woolwine were talking, Rhynes walked up to Woolwine and shot him in the head with a nine-millimeter pistol.  Ertz went inside the nearby office where Cates and Noble were at, and he began to vomit.

Cates, who had heard the gunshot, collected his belongings and began to walk down the road, away from the resort. Before Cates left, Rhynes approached him and told him to "calm down, that it was no big deal."

Ertz got into his truck and followed Cates. When Ertz caught up to Cates, he assured Cates that he was not going to harm him and that he did not have a handgun. Ertz told Cates that he was talking to Woolwine when Rhynes shot Woolwine. After further discussion, Ertz and Cates drove back to the ski resort together to confront Rhynes about what had happened.

When Ertz and Cates got back to the office, Cates saw Rhynes "digging a hole with a backhoe." Cates asked Rhynes why he did not simply fire Woolwine. Rhynes responded that "death didn't bother him and he didn't have a problem going to prison."

After Rhynes finished digging the hole, he asked Noble to help him place Woolwine's body inside. Noble complied. Afterwards, Rhynes and Noble moved Woolwine's van down the mountain "to get rid of it."

Cates was the only one to contact the police. On October 12, 2015, several deputies from the Kern County Sheriff's Department reported to the Shirley Mountain ski resort area around 11:00 a.m. to secure the area. Law enforcement located a spent nine-millimeter shell casing at the bottom of a trench area. Deputies also found a blood trail on the north side of the trench.

Woolwine's body was found buried at the bottom of the trench. His van was located on Highway 155, approximately three miles away from where the body was found.

An autopsy revealed that Woolwine had suffered a single, fatal gunshot wound between his left eye and nose and an exit wound on the backside of his head. Rhynes admitted shooting Woolwine, but claimed that it was an accident. According to Rhynes, he pointed the gun approximately six to eight inches above Woolwine's head in an attempt to scare him.

## ANALYSIS

**I.      Rhynes is Ineligible for Resentencing Relief as a Matter of Law**

Rhynes claims that the trial court erred by denying his petition for resentencing at the prima facie stage.  We disagree.

### A.      Section 1172.6

"Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) amended the felony-murder rule by adding section 189, subdivision (e).  [Citation.]  It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life.  [Citation.]  The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' "  (*People v. Harden* (2022) 81 Cal.App.5th 45, 50-51; *People v. Strong*, *supra*, 13 Cal.5th at pp. 707-708.)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," initially codified in former section 1170.95.  (*People v. Strong, supra,* 13 Cal.5th at p. 708.)  The initial version of former section 1170.95 permitted "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill 1437."  (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.)

Effective January 1, 2022, Senate Bill No. 775 (2020-2021 Reg. Sess.) (Senate Bill 775) made substantive amendments to former section 1170.95 that were consistent with our Supreme Court's decision in *People v. Lewis* (2021) 11 Cal.5th 952, 972

(*Lewis*), and also " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' " (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.)

On June 30, 2022, the statute was renumbered as section 1172.6 without further substantive changes. (See *People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.) Section 1172.6, subdivision (a) thus states:

> "(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:
>
>> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.
>>
>> "(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.
>>
>> "(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

The court shall appoint counsel if requested by petitioner. (§ 1172.6, subd. (b)(3).) After service of the petition, the prosecutor shall file and serve a response. The petitioner may file and serve a reply after the response is served. (*Id.* at subd. (c).) "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to

7.

determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

The prima facie determination is a question of law, and the trial court may deny a petition if the petitioner is ineligible for resentencing as a matter of law. (*Lewis, supra*, 11 Cal.5th at p. 966.) The prima facie inquiry under section 1172.6, subdivision (c) is "limited." (*Lewis,* at p. 971.) The court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*)

If the petitioner makes the requisite prima facie showing he or she is entitled to relief under section 1172.6, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).)

We review de novo an order denying a petition under section 1172.6 without issuing an order to show cause. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; *People v. Coley* (2022) 77 Cal.App.5th 539, 545; *People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

**B.     Analysis**

The charging instrument and change of plea colloquy support the conclusion that Rhynes was the sole perpetrator of Woolwine's murder. Ertz and Nobel were never

8.

charged with murder. Rather, they were charged with the crime of being an accessory after the fact (§ 32), by "having knowledge that Bobbie Dale Rhynes[] had committed the crime of murder, [they] willfully and unlawfully harbor[ed], conceal[ed], or aid[ed] Bobbie Dale Rhynes, in such felony, with the intent that he[] would avoid or escape from arrest, trial, conviction or punishment." (Unnecessary capitalization omitted.)

However, because murder was generically charged, and Rhynes did not admit to having acted with malice or any specific theory of murder in entering his plea, that alone did not foreclose him from resentencing relief. (See *People v. Flores* (2022) 76 Cal.App.5th 974, 987 (*Flores*) [petitioner was not ineligible for relief where, "[i]n entering his plea, petitioner did not admit to or stipulate to any particular theory of murder"]; see also, *People v. Eynon* (2021) 68 Cal.App.5th 967, 977 (*Eynon*) [petitioner who pleaded to a charge that he " 'did willfully, unlawfully, and with deliberation, premeditation, and malice aforethought murder' " the victim was not ineligible for resentencing as a matter of law because the charge was a "generic murder charge [that] allowed the prosecution to proceed on any theory of liability, including natural and probable consequences"]).

However, the transcript from Rhynes's preliminary hearing contains uncontroverted evidence that he was the sole and direct perpetrator of Woolwine's murder, and that malice could not have been imputed to him. We acknowledge however that there is a split of authority as to whether the superior court can rely on the preliminary hearing transcript to determine a petitioner's ineligibility for relief at the prima facie stage.

In *Eynon*, *supra*, 68 Cal.App.5th 967, the appellate court rejected the Attorney General's reliance upon factual admissions made by the petitioner at his preliminary hearing. (*Id*. at p. 976.) The court observed that "[b]eing held to answer on an allegation does not constitute a factual finding that the allegation is true (and the allegation itself does not establish its own truth). Being held to answer does not even constitute a

9.

determination that the allegation is supported by substantial evidence." (*Id*. at pp. 975-976.)

Moreover, the admissions made by Eynon were that the charged murder had occurred and that he had committed an act with the intent requisite to render him liable for murder *under then-existing law*. (*Eynon, supra,* 68 Cal.App.5th at p. 978.) Thus, even if the trial court had appropriately relied upon factual admissions in the preliminary hearing transcript, these admissions did not demonstrate Eynon's ineligibility for relief as a matter of law. (*Id*. at p. 979.)

In *People v. Davenport* (2021) 71 Cal.App.5th 476, the court held that a trial court may rely on a preliminary hearing transcript at the prima facie stage where the defendant has admitted the transcript provides the factual basis for the plea. (*Id*. at p. 481.)

In *Flores*, *supra*, 76 Cal.App.5th 974, this court rejected the People's assertion that portions of the preliminary hearing transcript conclusively demonstrated that the petitioner, who had plead no contest to second degree murder, was ineligible for resentencing relief under former section 1170.95. (*Flores,* at p. 987.) There, Flores and his codefendant, Bowman, were jointly charged with murder. (*Ibid*.) In entering a plea of no contest to second degree murder with an arming enhancement, the parties stipulated that the police reports and preliminary hearing transcript provided a factual basis for the plea. (*Id*. at p. 982.)

On appeal from the summary denial of his petition for resentencing, Flores argued that the trial court had erred by denying his petition at the prima facie stage. (*Flores, supra*, 76 Cal.App.5th at p. 978.) The People responded, in part, that the preliminary hearing transcript affirmatively demonstrated that Flores was the actual killer. (*Id*. at p. 987.) At Flores's preliminary hearing, an officer testified that Flores had claimed that Bowman had shot the victim, and that Flores had accidentally run over the victim twice as he (Flores) left the scene. The medical examiner identified the cause of death as gunshot wounds and blunt force injuries. (*Id*. at pp. 988, 991.)

10.

This court observed that Flores had never admitted the truth of the officer's testimony that Flores had admitted to driving over the victim twice, and that Flores's stipulation that the preliminary hearing transcript was the factual basis for the plea was "not a ' "binding admission for all purposes." ' " (*Flores, supra*, 76 Cal.App.5th at p. 991, citing *People v. Rivera* (2021) 62 Cal.App.5th 217, 235.) Even so, the testimony relied upon by the People did not exclude the possibility that Flores had been convicted under a theory of imputed malice. (*Flores*, at p. 991.)

In *People v. Pickett* (2022) 93 Cal.App.5th 982 (*Pickett*), the appellate court held that reliance on the preliminary hearing transcript at the prima facie stage is appropriate in some circumstances. There, the court addressed the following issue: "Whether a court, in assessing the prima facie showing under section 1172.6, can rely on evidence presented at the defendant's preliminary hearing where the petitioning defendant was convicted by plea in the underlying case and was appointed counsel but declined to file a brief or raise any factual issue or argument in support of the petition." (*Id.* at p. 991.) The appellate court answered this question affirmatively, observing that uncontradicted and compelling evidence from the preliminary hearing showed that Pickett had acted alone and as the actual killer.

Pickett, who had been represented by counsel throughout the former section 1170.95 petition proceedings, offered neither argument nor evidence to raise a factual issue on this point. Thus, the appellate court concluded it could "assess Pickett's prima facie showing without 'engag[ing] in "factfinding involving the weighing of evidence" ' or making any credibility determinations (*Lewis, supra*, 11 Cal.5th at p. 972)." (*Pickett, supra*, 93 Cal.App.5th at p. 990.)

This issue is imminently pending resolution by our Supreme Court. (See *People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279670.) In the interim, we observe that *Pickett* and *Flores* are not incompatible decisions.

*Pickett* concluded that reliance upon the preliminary hearing transcript at the prima facie stage may be appropriate, depending upon the circumstances. There, just as in the case at bench, the preliminary hearing transcripts showed there was only one cause of death and there was no testimony showing that anyone other than Pickett was involved in the shooting. (*Pickett, supra,* 93 Cal.App.5th at p. 990.) Because the record of conviction, including the preliminary hearing transcript, contained uncontroverted evidence that Pickett alone had killed the victim, the court did not " 'engage in "factfinding involving the weighing of evidence or the exercise of discretion," ' " by denying Pickett's petition for resentencing at the prima facie stage. (*Id.* at p. 989.)

On the other hand, in *Flores,* there were two possible causes of death and two possible perpetrators of the murder. Moreover, even if the preliminary hearing testimony relied upon by the Attorney General in arguing that Flores was the actual killer, it would not have conclusively established that malice was not imputed to Flores. *Flores* did not hold that reliance upon the preliminary hearing transcript at the prima facie stage is impermissible. We merely concluded that the testimony relied upon did not conclusively negate Flores's assertions in his petition for resentencing, without factfinding, based on the circumstances of the offense.

"[N]o factfinding, weighing of evidence, or credibility determinations" were or are necessary here, as Rhynes was the sole, actual killer who was directly—not vicariously—liable for Woolwine's death. (*People v. Harden, supra*, 81 Cal.App.5th at p. 59.) Rhynes has never contested the fact that he killed Woolwine. Indeed, the only factual dispute was whether he did so intentionally and with premeditation, or whether the shooting was accidental. Based upon the record of conviction, Rhynes's plea to voluntary manslaughter affirmatively demonstrates, that as the sole and actual killer, malice was not imputed to him. (*People v. Bryant* (2013) 56 Cal.4th 959, 970 ["voluntary manslaughter requires either an intent to kill or a conscious disregard for

life"].) Thus, the trial court correctly held that Rhynes is ineligible for resentencing relief as a matter of law.

## DISPOSITION

The trial court's order denying Rhynes's petition for resentencing is affirmed.